[No. 30237-3-II. Division Two. October 5, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. ALBERT EARL VAN BUREN, *Appellant*.

*Thomas E. Weaver, Jr.*, for appellant.

*Russell D. Hauge, Prosecuting Attorney,* and *Jennifer A. Irvine Forbes, Assistant,* for respondent.

QUINN-BRINTNALL, C.J. — Albert Earl Van Buren appeals his exceptional sentence imposed after he entered an *Alford*[1] plea to two counts of third degree rape of a child, RCW 9A.44.079, a class C felony, and one count of third degree rape, RCW 9A.44.060, also a class C felony. Although he stipulated to its correctness below, for the first time on appeal Van Buren objects to the sentencing court's calculation of his offender score. He also challenges the trial court's finding that he lacked remorse for his crimes and his exceptional sentence.

In our initial opinion, we held that the miscalculation of Van Buren's offender score by one point (15 instead of 14) was harmless. We also upheld (1) the sentencing judge's finding that Van Buren lacked remorse and (2) the court's exceptional sentence of 120 months followed by 36-48 months community custody.

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) ("[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime").

On May 25, 2004, we issued our initial unpublished opinion in *State v. Van Buren*, noted at 121 Wn. App. 1056, 2004 WL 1240387, 2004 Wash. App. LEXIS 1088. On June 14, 2004, Van Buren's attorney filed a timely motion for reconsideration asking, in effect, that we stay our decision pending the decision of the United States Supreme Court in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Before we ruled on Van Buren's motion to reconsider, the United States Supreme Court issued its decision in *Blakely* on June 24, 2004. On June 29, 2004, we ordered the State to file a response addressing the application of *Blakely* to this case. We withdrew our earlier opinion on July 13, 2004.

Here, we hold as follows: First, *Blakely* applies to all cases in which review was not final on June 24, 2004. Second, under *Blakely*, a jury must find disputed facts beyond a reasonable doubt before the sentencing court may rely on these facts to impose an exceptional sentence above the standard range. Third, *Blakely* does not require a jury determination of a defendant's criminal history. Fourth, the calculation of a defendant's offender score is not a question of fact but a legal calculation made by the sentencing judge after consideration and resolution of legal issues and rulings on statutes and laws that apply to the defendant's criminal history. Thus, a defendant's offender score is not a question of fact that must be proved to a jury beyond a reasonable doubt. Fifth, whether there are substantial and compelling reasons to impose an exceptional sentence is a "proportionality" type judgment for the sentencing court. Sixth, whether a defendant with an offender score greater than 9 receives "free crimes" if sentenced within the standard range is part of the calculation of a defendant's offender score and is not a question of fact for the jury.

Van Buren's sentencing court miscalculated his offender score, overestimating it by one point. But this miscalculation did not alter Van Buren's standard range and the error was harmless. The sentencing judge expressly stated that *either* Van Buren's high offender score *or* his lack of remorse

was a substantial and compelling reason justifying the exceptional sentence it imposed. Given Van Buren's high offender score, imposition of a standard range sentence would have resulted in Van Buren receiving no punishment for two of his current offenses. An exceptional sentence was appropriate and we affirm.

## FACTS

On October 7, 2002, the State charged Van Buren by first amended information with two counts of third degree rape of a child and one count of third degree rape. The charges arose from three separate incidents and involved three separate victims. The crimes occurred between August 2001 and June 2002. Van Buren entered into a plea agreement under which he would enter an *Alford* plea on each of the three charges. In exchange, the State promised not to prosecute (among other things) witness tampering and bail jumping charges and to recommend that Van Buren be sentenced to the maximum 60 months on each count, apparently to be served concurrently.

The plea agreement included a provision that released the State from its sentencing recommendation obligation if Van Buren attempted to withdraw his guilty plea. On November 22, 2002, before his sentencing hearing, Van Buren filed a motion to withdraw his guilty plea, claiming only that his original defense counsel was ineffective for advising him to accept the agreement. On January 22, 2003, the State filed a motion to find that by filing the motion to withdraw his pleas, Van Buren breached his plea agreement. On March 19, 2003, the trial court denied Van Buren's motion to withdraw the plea, found that he had breached his plea agreement, and relieved the State of its promises. But the State did not alter its sentence recommendation, nor did it file additional charges.

At sentencing, Van Buren exercised his right to speak and blamed his prior defense counsel, as well as the victims and their parents, for failing to "take responsibility for their

actions." Report of Proceedings (Mar. 21, 2003) at 17. Van Buren claimed that he, his family, and his fiancée were the true victims.

The court sentenced Van Buren to 120 months followed by 36-48 months' community custody. The sentencing court entered "Findings of Fact and Conclusions of Law" in support of an exceptional sentence as follows:

FINDINGS OF FACT

I.

That the Defendant has been convicted of Two counts of Rape of a Child in the Third Degree and one count Rape in the Third Degree in this cause[.] The Defendant's standard range is 60 months[.] The statutory maximum is five (5) years incarceration[.]

II.

That the defendant has an offender [score] above "9" on each count[.] The parties have agreed that the defendant's offender score is a "15," but even if lower, the offender score is still beyond the maximum of "9[.]"

III.

That the defendant has exhibited a lack of remorse by his actions at the time of the offenses, and by his statements in court during the sentencing hearing[.]

IV.

That the defendant's criminal history and present charges shows a pattern of escalating violence[.]

CONCLUSIONS OF LAW

I.

That the above-entitled Court has jurisdiction over the parties and the subject matter of this action[.]

II.

That there are substantial and compelling reasons to impose an exceptional sentence of 120 months[.]

III.

That there are substantial and compelling reasons to impose an exceptional sentence supervision of 36-48 months . . . of community placement with affirmative conditions as set forth

in the Judgment and Sentence[.] *State v*[.] *Guerin*, 63 Wn[.] App[.] 117, 816 P[.]2d 1249 (1991), *review denied*, 118 Wn[.]2d 1015 (1992)[.]

IV.

That the exceptional sentence is justified by the following aggravating circumstances—

(a) The defendant's offender score is above the maximum of "9[.]"

(b) The defendant shows no remorse for his actions/ offenses[.]

V.

That the grounds listed in the preceding paragraph, taken together or considered individually, constitute sufficient cause to impose the exceptional sentence[.] This Court would impose the exact same sentence even if only one of the grounds listed in the preceding paragraph is valid[.]

Clerk's Papers (CP) at 79-80. The judgment and sentence listed each of Van Buren's three convictions as having a standard range sentence of 60 months. Based on its findings, the sentencing court imposed an exceptional sentence of 120 months with 36 to 48 months of community custody.

ANALYSIS

APPLICATION OF *BLAKELY*

We first address whether the Supreme Court's decision in *Blakely* affects our decision here. The State concedes that it does,[2] and we agree.

■ Whether the Supreme Court's opinion in *Blakely* "worked a sea change in the body of sentencing law," *United States v. Ameline*, 376 F.3d 967, 973 (9th Cir. 2004), or merely applied procedural requirements set out in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), in a new context (as suggested by *Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519, 159 L.

---

[2] "VanBuren [sic] may nonetheless raise a *Blakely* claim because his direct appeal is not yet final." State's Resp. to Mot. for Recons. at 4.

Ed. 2d 442 (2004), announced June 24, 2004),[3] one thing is certain—*Blakely* requires alterations to Washington's 20-year-old sentencing process. Before this country's highest court issued its opinion in *Blakely*, the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, permitted a judge to impose a sentence above the standard range guideline on the basis of facts neither admitted by the defendant nor found by the jury. The *Blakely* Court held: " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " 124 S. Ct. at 2536 (quoting *Apprendi*, 530 U.S. at 490 (holding unconstitutional a state statute which authorized a 20-year sentence, despite the usual 10-year maximum, if the judge found the crime to have been a hate-crime)). This "sea change" in the law was not caused by *Blakely*'s apparent reliance on *Apprendi*. Rather, it was caused by *Blakely*'s application of the *Apprendi* jury trial requirement to the presumptive sentencing grids established by the SRA. While *Apprendi* required a jury trial before doubling the maximum statutory range, *Blakely* extended that require-ment to standard range sentences below the statutory maximums. Although it was reasonable to assume that *Apprendi* would apply to sentencing provisions that doubled or extended the statutory maximum in certain circumstances, it did not follow that *Apprendi* would man-date the Court's holding in *Blakely*. This is particularly so as our Supreme Court had ruled to the contrary in *State v. Gore*, 143 Wn.2d 288, 315, 21 P.3d 262 (2001). Because *Blakely* announced a new rule, we now address whether Van Buren can raise it.

■ The United States Constitution does not address the scope of application of decisions announced by the United States Supreme Court. *United States v. Johnson*, 457 U.S. 537, 542, 102 S. Ct. 2579, 73 L. Ed. 2d 202 (1982) (" '[T]he

---

[3] *But see Schriro*, 542 U.S. 348 (*Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), interpreting *Apprendi*, 530 U.S. at 490, as procedural and not retroactive).

federal constitution has no voice upon the subject' of retrospectivity." (alteration in original) (quoting *Great N. Ry. Co. v. Sunburst Oil & Ref. Co.*, 287 U.S. 358, 364, 53 S. Ct. 145, 77 L. Ed. 360 (1932))). But in *Griffith v. Kentucky*, 479 U.S. 314, 322, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987), the highest court announced the rule that, at a minimum, all defendants whose cases were still pending on direct appeal at the time of the law-changing decision are entitled to invoke the new rule and benefit from the change in the law. *See also Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S. Ct. 948, 127 L. Ed. 2d 236 (1994).

In Washington, a case is "final," or no longer pending, when the judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari has elapsed. *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 327, 823 P.2d 492 (1992) (quoting *Griffith*, 479 U.S. at 321 n.6). Although we issued our original opinion in this case on May 25, 2004, as of June 24, 2004, when the *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), opinion was announced, a motion for reconsideration was pending and Van Buren still had the right to timely petition our state Supreme Court and the United States Supreme Court for review. Accordingly, the case was not final on June 24, 2004, and the Supreme Court's opinion in *Blakely* applies here.

SCOPE OF *BLAKELY*

FACTS THAT INCREASE PENALTY

As stated above, under *Blakely*, any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory sentencing range, must be submitted to a jury and proved beyond a reasonable doubt. 124 S. Ct. at 2536. This jury trial requirement guarantees that accusations that lack any particular factual proof will not be used in sentencing a defendant. In *Apprendi*, the fact at issue was the defendant's motivation, i.e., the defendant's commission of the offense "with a

purpose to intimidate . . . because of race, color, gender, handicap, religion, sexual orientation or ethnicity." *Apprendi*, 530 U.S. at 468-69. In *Blakely*, the fact at issue was whether the defendant acted with deliberate cruelty. 124 S. Ct. at 2537. Here, because the State concedes that *Blakely* requires a jury verdict on Van Buren's lack of remorse, we do not analyze the issue further.[4]

### DEFENDANT'S CRIMINAL HISTORY AND OFFENDER SCORE

■ ■ *Blakely* does not require a jury finding of the defendant's criminal history. *Blakely* cites with approval the " '[o]ther than the fact of a prior conviction' " exception set forth in *Apprendi*. 124 S. Ct. at 2536 (quoting *Apprendi*, 530 U.S. at 490). Accordingly, we hold that a defendant's criminal history, the record of his criminal felony and misdemeanor convictions, need not be proved to a jury beyond a reasonable doubt before it can be taken into consideration by the sentencing judge. It follows that the decision of whether to impose a sentence above the standard range based solely on the defendant's criminal history is not a *fact* to be determined by a jury. It is a *judgment* for the sentencing court. *See, e.g.*, former RCW 9.94A.535(2)(j) (2001) (permitting exceptional sentence where "the defendant's prior unscored misdemeanor or prior unscored foreign criminal history results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010").

■ Like a defendant's criminal history, a defendant's offender score does not require the resolution of disputed facts. Instead, criminal history is the result of a complicated calculation of rules and statutory applications, often requir-

---

[4] The State does not argue in support of the trial court's second basis for imposing the exceptional sentence: "The lack of remorse aggravator was not submitted to a jury. Although the rights *Blakely* confers may be waived, Van Buren has not waived these rights with regard to this circumstance. VanBuren [sic] is thus correct that his lack of remorse was not properly considered as a basis for his exceptional sentence." State's Resp. to Mot. for Recons. at 4 (footnote omitted). We accept the State's concession. *But see United States v. Cotton*, 535 U.S. 625, 632-33, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002) (*Apprendi* error harmless where defendant did not object to infirmity of indictment).

ing comparison between the elements of a defendant's prior convictions under the statutes of foreign jurisdictions with the elements of crimes under Washington statutes. *See, e.g.*, former RCW 9.94A.525(3) (2001) (discussing use of out-of-state convictions in calculating offender score). This calculation is a mixed question of law and fact. The "fact" is the fact of the conviction, which is not a jury question. *See Blakely*, 124 S. Ct. at 2536. The law is the proper application of the law to the fact of the defendant's criminal record. The calculation of a defendant's offender score is not a factual matter for the jury and thus is properly determined by the sentencing judge.

SUBSTANTIAL AND COMPELLING GROUNDS FOR DEPARTURE

■ *Blakely* also noted that whether an aggravating factor presents a compelling ground for departure from the standard range is a matter of judgment. 124 S. Ct. at 2538 n.8. The *Blakely* majority held that so long as the sentencing judge makes the *factual* decision regarding the presence or absence of an aggravating fact, the SRA conflicts with a defendant's right to a jury trial. But whether properly determined facts present a compelling ground for departure from the standard range remains a judgment for the sentencing judge. Although a jury must evaluate the credibility of witnesses and evidence and decide disputed issues of fact, it is the responsibility of the sentencing judge to determine whether facts alleged and found are sufficiently substantial and compelling to warrant imposing an exceptional sentence. *See Blakely*, 124 S. Ct. at 2538 n.8;[5] former

---

[5] The Court stated:

> Nor does it matter that the judge must, after finding aggravating facts, make a judgment that they present a compelling ground for departure. He cannot make that judgment without finding some facts to support it beyond the bare elements of the offense. Whether the judicially determined facts *require* a sentence enhancement or merely *allow* it, the verdict alone does not authorize the sentence.

*Blakely*, 124 S. Ct. at 2538 n.8. Implicit in this statement is the idea that once the jury determines the threshold facts, the judge's role—to determine the effect of these facts—is not diminished.

RCW 9.94A.535 (2001);[6] *see also* RCW 10.95.130(2)(b) (requiring our state Supreme Court to determine "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant"); *cf. Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 377, 381-82, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996) (in determining whether it is proper for a jury to " 'shoulder [the] responsibility [of construction of a written instrument] . . . to preserve the substance of the [Seventh Amendment] common-law right of trial by jury,' " noting that judges not juries, ordinarily construe written documents (emphasis omitted) (quoting *Tull v. United States*, 481 U.S. 412, 426, 107 S. Ct. 1831, 95 L. Ed. 2d 365 (1987)); *Jackson v. Denno*, 378 U.S. 368, 385-86, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964) (holding that state's procedure, providing for jury evaluation of voluntariness of a defendant's confession, violates Fourteenth Amendment due process).

 ■ Some have argued that *Blakely* prohibits the trial judge from imposing any sentence above the standard range. We believe this reading of *Blakely* is too broad. Such a reading does not distinguish between the necessary resolution of factual disputes (which *Blakely* clearly holds must be made by a jury) and the legal judgment of whether such facts are substantial and compelling or result in a sentence that is clearly too lenient (which is a judgment for the sentencing authority—the court). Moreover, this broad reading suggests that only those defendants who exercise their right to a jury trial may receive a sentence above the standard range. Such an interpretation would run afoul of other Supreme Court decisions prohibiting disparate sentences based on the exercise of the right to a jury trial. *See, e.g., United States v. Jackson*, 390 U.S. 570, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968). *But see Corbitt v. New Jersey*, 439 U.S. 212, 99 S. Ct. 492, 58 L. Ed. 2d 466 (1978).

 Such an interpretation would also run afoul of recent cases that narrowly apply the holding and rationale of

---

[6] That statute states in pertinent part, "The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." Former RCW 9.94A.535.

*Apprendi.* For example, in *United States v. Cotton*, 535 U.S. 625, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002), the United States Supreme Court refused to vacate a defendant's aggravated sentence even though the indictment failed to specify and the jury made no finding of the quantity of drugs necessary to support the aggravating sentence factor. The Court held that the indictment was defective under the requirements of the federal sentencing guidelines statute and *Apprendi*, but that the error did not require reversal because the defendant had failed to raise the challenge at trial and the record contained "overwhelming" and "essentially uncontroverted" evidence of the quantity of drugs involved. *Cotton*, 535 U.S. at 632-33. More importantly, on the same day it announced its decision in *Blakely*, the nation's highest court ruled that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), which applied *Apprendi* to hold that a judge may not find aggravating factors necessary to impose the death penalty, announced a *procedural* rule that would not be applied to convictions already final on direct appeal. If the Supreme Court intended *Blakely* to be read broadly to prohibit all judicially imposed exceptional sentences, it would have done so expressly. To the contrary, neither *Blakely*, *Apprendi*, nor other cases applying *Apprendi* expressly prohibit judges from imposing sentences above the standard sentencing range when the defendant's criminal history (rather than a disputed fact) justifies such a sentence, and we decline to accept such a broad reading of the *Apprendi* jury trial requirement. *Blakely* does not require a jury to determine whether the facts they have found beyond a reasonable doubt are sufficiently substantial and compelling to justify an exceptional sentence—under the SRA that remains a matter of judgment for the sentencing judge.

STATUTORY MAXIMUM SENTENCE

*Blakely* addresses proof requirements for facts that would be used to increase a penalty beyond the maximum set forth by the standard range. 124 S. Ct. at 2536-37.

Using a standard range calculation, the top of Van Buren's standard range could have been 102 months. But limited by the statutory maximum for a class C felony, Van Buren's standard range was calculated as 60 months on each count.

■ At the plea hearing, the trial court questioned why the standard range was "60 months." The defense counsel explained that these were class C felonies with a 60-month statutory maximum term.[7] The statutory maximum under the pre-SRA sentencing process included a requirement that "whenever a person is convicted of two or more offenses arising from separate and distinct acts or omissions, . . . the sentences imposed therefor shall run consecutively." RCW 9.92.080(3). For crimes like Van Buren's that were committed on or after July 1, 1984,[8] a trial court is authorized to impose consecutive sentences where it does not find that the offenses constitute "same criminal conduct,"[9] although it must do so under the exceptional sentence provisions of former RCW 9.94A.535(2)(i). Thus, the jurisdictional statutory maximum for all three of Van Buren's offenses is 180 months.[10] It is important to recognize that *Blakely v.*

---

[7] The 60-month standard range calculation is as follows:

(1) Van Buren had an offender score in excess of 9.

(2) Third degree rape of a child is a level VI offense. Former RCW 9.94A.515 (2001).

(3) Third degree rape is a level V offense. Former RCW 9.94A.515.

(4) The standard range for a level VI crime for an individual with an offender score of 9 is 77-102 months. Former RCW 9.94A.510 (2000).

(5) The standard range for a level V crime for an individual with an offender score of 9 is 72-96 months. Former RCW 9.94A.510 (2000).

(6) "[A] court may not impose a sentence providing for a term of confinement or community supervision, community placement, or community custody which exceeds the statutory maximum for the crime as provided in chapter 9A.20 RCW." Former RCW 9.94A.505(5) (2001).

The statutory maximum provided under RCW 9A.20.021(1)(c) for *each* of the crimes charged, all class C felonies, is 5 years (60 months).

[8] *See* RCW 9.92.900.

[9] *See* former RCW 9.94A.589(1)(a) (2000).

[10] *Compare Apprendi*, 530 U.S. at 474:

[T]he State has argued that even without the trial judge's finding of racial bias, the judge could have imposed consecutive sentences on counts 3 and 18 that

*Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), did not eliminate the sentencing court's authority to impose an exceptional sentence when a jury finds disputed aggravating factual issues beyond a reasonable doubt. *Blakely* does not alter the jurisdictional statutory maximum sentence a court may impose based on the defendant's criminal history, offender score, or proper jury findings.

MISCALCULATION OF OFFENDER SCORE

Van Buren also argues that the trial court's miscalculation of his offender score requires reversal of his exceptional sentence. Van Buren does not challenge his criminal history, which he acknowledged in the plea agreement to be true, correct, and complete. In addition, Van Buren stipulated that his offender score was above a 9. For its part, the State concedes that Van Buren's offender score should have been a 14 instead of a 15.

We review a trial court's calculation of an offender score de novo. *State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003). Remand is necessary when the trial court miscalculates an offender score unless the record clearly shows that the trial court would have imposed the same sentence. *Tili*, 148 Wn.2d at 358.

Van Buren's correctly calculated offender score is 14. Important to our decision is the fact that the recalculation of Van Buren's offender score is not the result of a conviction having been improperly included in Van Buren's criminal history. Instead, it is the result of two points being added to his offender score for being on community custody for two separate offenses, whereas former RCW 9.94A.525(17)

---

would have produced the 12-year term of imprisonment that Apprendi received; Apprendi's actual sentence was thus within the range authorized by statute for the three offenses to which he pleaded guilty. . . . The constitutional question, however, is whether the 12-year sentence imposed on count 18 was permissible, given that it was above the 10-year maximum for the offense charged in that count. The finding is legally significant because it increased—indeed, it doubled—the maximum range within which the judge could exercise his discretion, converting what otherwise was a maximum 10-year sentence on that count into a minimum sentence. The sentences on counts 3 and 22 have no more relevance to our disposition than the dismissal of the remaining 18 counts.

permits only one point to be added. This is a legal calculation, not a factual one.

Here the trial judge found, "The parties have agreed that the defendant's offender score is a '15', but even if lower, the offender score is beyond the maximum of '9'." CP at 79-80. Accordingly the trial court concluded that:

[T]he grounds listed in the preceding paragraph [including the statement that "defendant's offender score is above the maximum of '9'"], taken together *or considered individually*, constitute sufficient cause to impose the exceptional sentence[.] This Court would impose the exact same sentence even if only one of the grounds listed in the preceding paragraph is valid[.]

CP at 80 (emphasis added).

The trial court did not rely on the 15 calculation. It relied on Van Buren's offender score being greater than a 9 and that this high offender score would result in Van Buren receiving no punishment for some of his current offenses if sentenced within the standard range. The miscalculation does not affect Van Buren's standard range. *See* former RCW 9.94A.510 (2000). Because an offender score of 15 *or* 14 would result in Van Buren receiving no punishment for his current offenses or, in the vernacular, getting "free crimes," the one-point miscalculation of Van Buren's offender score is harmless. The record establishes that the trial court would have imposed the same sentence had it known that Van Buren's correct offender score was 14 and not 15.

"Free Crime" Sentence Enhancements

Van Buren also contends that an offender score greater than a 9 is a legally insufficient ground for imposing an exceptional sentence.

We note first that *Blakely* did not declare the SRA to be unconstitutional (124 S. Ct. at 2540), nor did it relieve the sentencing judge of the duty to make a judgment as to whether properly found aggravating facts were "substantial

and compelling" reasons requiring an exceptional sentence.[11] Former RCW 9.94A.535.

Here the sentencing court properly determined that (1) Van Buren was convicted of two counts of third degree rape of a child and one count of third degree rape, and (2) Van Buren had an offender score well beyond the maximum of 9. To support his proposition that a high offender score does not warrant an exceptional sentence, Van Buren relies on *State v. Stephens*, 116 Wn.2d 238, 242, 803 P.2d 319 (1991). But Van Buren's reliance is misplaced.

▮ In *Stephens*, our Supreme Court held that offender scores are "simply restatements of the crimes for which [the defendant] was convicted" and that, as such, "a high offender score *alone* is insufficient to justify an exceptional sentence." 116 Wn.2d at 242-43 (emphasis added). But *Stephens* also held that a defendant who is already at the upper limit of the sentencing grid "should receive a greater punishment *if he commits more than one current crime.*" 116 Wn.2d at 243. Although there is language in *Stephens* suggesting that the trial court's decision was based on the statutory multiple offense policy,[12] the opinion noted that the trial court did not expressly state such reliance. Moreover the multiple offense policy does not apply to crimes like Van Buren's that were committed at different times against different victims. Because a defendant in such circumstances will receive no punishment for one or more of his current offenses, this result is generally referred to as "free crimes." In *State v. Smith*, 123 Wn.2d 51, 864 P.2d 1371 (1993), our Supreme Court clarified *Stephens* and held, "This inquiry [whether there are substantial and compelling reasons justifying an exceptional sentence] is *automatically* satisfied whenever 'the defendant's high offender

---

[11] *See Blakely*, 124 S. Ct. at 2538 n.8 (recognizing judge's authority, after aggravating facts are found, to "make a judgment that [the facts] present a compelling ground for departure" from the standard sentence).

[12] *See* former RCW 9.94A.535(2)(i) ("The operation of the multiple offense policy [counting current offenses encompassing same criminal conduct as one crime in calculating offender score] results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter.").

score is combined with multiple current offenses so that a standard sentence would result in "free" crimes—crimes for which there is no additional penalty.' " 123 Wn.2d at 56 (emphasis added) (quoting *Stephens*, 116 Wn.2d at 243).

Eight of Van Buren's offender score points were due to prior offenses. Van Buren's multiple separate current offenses caused his offender score to exceed the standard sentencing range guideline grid. Thus, imposing a standard range sentence would have resulted in Van Buren receiving "free crimes," or some of his current crimes going unpunished. *Stephens*, 116 Wn.2d at 243. *See also State v. Coats*, 84 Wn. App. 623, 628, 929 P.2d 507, *review denied*, 132 Wn.2d 1003 (1997).

"Free crime" analysis is a function of determining the defendant's offender score from the record of his prior and current criminal convictions. It does not require weighing evidence, determining credibility, or making a finding of disputed facts.[13] Thus, it is not affected by the *Blakely* requirement that *factual* issues used to impose an exceptional sentence must be pleaded and proved to a jury beyond a reasonable doubt.

*Blakely* does not alter the standards for reviewing an exceptional sentence we followed previously. Thus, we now turn to the questions of whether (1) under a clearly erroneous standard, the reasons supplied by the sentencing court are supported in the record that was before the judge; (2) under a de novo standard, those reasons justify a sentence outside the standard range; and (3) under an abuse of discretion standard, the sentence imposed was clearly excessive. *State v. Rotko*, 116 Wn. App. 230, 242, 67 P.3d 1098 (2003) (quoting RCW 9.94A.585(4)) (citing *State v. Solberg*, 122 Wn.2d 688, 705, 861 P.2d 460 (1993)).

---

[13] We note, without holding, that in cases involving simultaneous crimes committed against a single victim (and application of the "multiple offense policy" under current RCW 9.94A.589), *Blakely* may require that a jury determine the defendant's intent at the time he committed the offense because the defendant's intent and motivation is a disputed factual issue. *See, e.g., Apprendi v. New Jersey*, 530 U.S. 466, 491-94, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

■■ ■■ Under a clearly erroneous standard, the record supports one of the reasons supplied by the sentencing court. As set forth above, *Blakely* does require a jury determination of the disputed fact of Van Buren's lack of remorse. Because a jury made no such finding, the record does not support that reason for imposing a sentence above the standard range. But *Blakely* does not require that a jury find Van Buren's criminal history, calculate his offender score, or make the "free crimes" determination based on his criminal record. Here, Van Buren stipulated to his criminal history and admitted that his offender score was more than 9. In addition, the record establishes that Van Buren's excessive offender score was a result of current offenses that would go unpunished if he were sentenced within the standard range. The trial court concluded that it would impose the same sentence on either basis alone. Thus, the record before us supports the trial court's free crime reason for imposing an exceptional sentence.

Under a de novo standard, the trial court's reasons justify a sentence outside the standard range. Here, we examine de novo whether the reasons supported by the record are sufficiently substantial and compelling to justify a sentence outside the standard range. We hold that they are because imposition of a standard range sentence would allow Van Buren to escape punishment for two of his current offenses. *See Smith*, 123 Wn.2d at 56 ("free crimes" automatically satisfies this standard).

■■ We now consider whether Van Buren's sentences were clearly excessive under an abuse of discretion standard. A "clearly excessive" sentence is one that is " 'clearly unreasonable, *i.e.*, exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would have taken.' " *State v. Ritchie*, 126 Wn.2d 388, 393, 894 P.2d 1308 (1995) (quoting *State v. Oxborrow*, 106 Wn.2d 525, 531, 723 P.2d 1123 (1986)).

■■ Here, the trial court's 120-month sentence is supported by Van Buren's high offender score and the fact that imposition of a standard range sentence would result in

"free crimes." Without the statutory maximum cap of RCW 9A.20.021(1)(c), Van Buren's standard range would have been 77 to 102 months. Application of the statutory maximum cap resulted in each of Van Buren's three convictions receiving a standard range of only 60 months. Run consecutively,[14] the court had jurisdiction[15] to sentence Van Buren to 180 months. Instead, Van Buren received a total sentence of 120 months with community custody of 36 to 48 months.[16]

The sentencing court did not abuse its discretion by punishing Van Buren for each rape he committed. Imposing a standard range sentence would have resulted in Van Buren avoiding punishment for two of his current offenses. By imposing an exceptional sentence of 120 months followed by 36-48 months community custody, the sentencing court avoided this unjust "free crimes" consequence. As a matter of law, when the defendant's offenses do not arise from the same criminal conduct, and punishing a defendant for each crime he is found to have committed is not excessive.

## CONCLUSION

Van Buren's exceptional sentence is supported by the record of his criminal history and by an offender score calculation in excess of 9, which would have resulted in free crimes if the court had imposed a sentence within the standard range. These factors are calculations based on Van Buren's criminal history and are not findings of dis-

---

[14] *See* former RCW 9.94A.535(2)(i).

[15] We distinguish between the trial court's *jurisdiction* and its *authority* to impose an exceptional sentence. After *Blakely*, the trial court's *authority* (to rely on disputed facts in determining whether there are substantial and compelling reasons justifying an exceptional sentence) is limited by requirement of a jury finding of those facts. But once found in accord with *Blakely*'s jury trial requirement, the court's authority is limited by appellate review of the substantial evidence presented, the maximum sentence of the offense charged and the reasonableness of the sentence imposed.

[16] Consecutive sentences require imposition of an exceptional sentence under the SRA. Former RCW 9.94A.589(1)(a).

puted fact that require jury resolution under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Moreover, the sentence imposed was not excessive as a matter of law.

Affirmed.

ARMSTRONG, J., and SEINFELD, J. Pro Tem., concur.