100 P.3d 837 (2004)
STATE of Washington, Respondent,
v.
Jeffrey ALKIRE, Appellant.
No. 52500-0-I.
Court of Appeals of Washington, Division 1.
November 15, 2004.
*838 David Bruce Koch, Attorney at Law, Seattle, WA, for Appellant.
Thomas Marshal Curtis, Snohomish County Pros. Office, Everett, WA, for Respondent.
ELLINGTON, A.C.J.
Any fact that increases the penalty for a crime beyond the maximum authorized by the verdict aloneother than the fact of a prior convictionmust be submitted to a jury and proved beyond a reasonable doubt.[1] The sentencing court in this case imposed an increased penalty based on Jeffrey Alkire's extraordinary offender score. Because the sentence was authorized by statute and was based solely on facts found by the jury and on the fact of Alkire's prior convictions, the increased penalty did not violate Alkire's due process or Sixth Amendment rights under Apprendi v. New Jersey and Blakely v. Washington. We therefore affirm Alkire's exceptional sentence.

DISCUSSION
A jury found Jeffrey Alkire guilty of one count of second degree possession of stolen property and one count of attempting to elude a pursuing police vehicle. At sentencing, Alkire stipulated in writing to the accuracy and completeness of the State's recitation of his history of convictions. Based on this undisputed history, Alkire's offender score was 20 for the possession count and 21 for the attempting to elude count. The presumptive standard range sentence for each count was 22 to 29 months, served concurrently. The court ruled the presumptive sentence was "clearly too lenient" and imposed an exceptional sentence of 29 months on each count, to be served consecutively.
Alkire first contends that in Blakely, the United States Supreme Court declared Washington's exceptional sentence provisions facially unconstitutional. For the reasons set forth in State v. Harris,[2] we reject this contention.
*839 Anticipating this result, Alkire contends that his sentence is invalid because it required the improper judicial fact-finding condemned in Apprendi and Blakely. He argues that whether a sentence is clearly too lenient is a factual determination. In the circumstances presented here, however, the only relevant fact was Alkire's offender score. That score was based exclusively on the jury's finding that he committed the current offenses and on his prior convictions, to which he stipulated and which Apprendi and Blakely expressly exclude from the prohibition against improper judicial fact-finding.
Under the Sentencing Reform Act (SRA), the court must generally impose a sentence within the standard sentence range established by the legislature.[3] The range is determined for each current offense, first by identifying the statutory seriousness level for that offense, and then by calculating the defendants offender score, a number based primarily on criminal history.[4] The court then determines the standard sentence range for each offense by consulting the statutory sentencing grid and finding the intersection of the offender score and the offense seriousness level.[5] This is ordinarily the sentence authorized by the verdict alone.[6]
If a defendant commits multiple offenses and those are sentenced together, they are counted as current offenses, and the offender score calculation for each crime includes the others,[7] thereby increasing the offender score and, in consequence, increasing the standard sentence range for each current offense. Recognizing this, the standard range contemplates that sentences for current offenses will be served concurrently, with the offender score serving as the vehicle for ensuring accountability on each offense.[8] This scheme is known as the multiple offense policy. Its purpose is "to limit the consequences of multiple convictions stemming from a single act."[9]
A sentencing court may impose a sentence outside the standard range only if "there are substantial and compelling reasons justifying an exceptional sentence."[10] In RCW 9.94A.535(2), the legislature created a non-exclusive list of aggravating circumstances that constitute substantial and compelling reasons for an upward departure from the sentencing guidelines. One of those is implicated here: an enhanced sentence is justified where "[t]he operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly too lenient in light of the purposes of this chapter."[11]
Given the purpose of the multiple offense policy, the mere presence of multiple offenses does not justify an exceptional sentence on the basis that the sentence is clearly too lenient. Rather, an exceptional sentence is permitted when the rules for sentencing multiple current offenses mean that "some extraordinarily serious harm or culpability resulting from multiple offenses... would not otherwise be accounted for in determining the presumptive sentence range."[12] Because the highest offender score accounted for in the sentencing grid is 9, the highest standard range reflects only that level of criminal historyit does not reflect additional convictions. In such situations, "[b]oth public policy and the stated purposes of the SRA demand full punishment for each current offense."[13] Extraordinarily serious harm or culpability is therefore "automatically" established whenever an offender score greater than 9 is combined with multiple *840 current offenses, because "`a standard sentence would result in `free' crimescrimes for which there is no additional penalty.'"[14]
Such was the case here. Based solely on Alkire's undisputed criminal history, the offender scores for his current offenses were extremely high: 20 and 21. Given that Alkire was beyond the top of the standard range grid, the standard range for each current offense was not impacted by inclusion of the other current offense in his offender score. A standard range concurrent sentence would have meant he received no punishment for one of his crimes.
Alkire does not challenge the accuracy of his offender score calculation, nor suggest that it depends on facts other than past convictions.[15] The sentencing court's determination that a standard range sentence would be clearly too lenient was therefore based solely on the jury's finding that Alkire committed two new crimes, and on the undisputed existence of his prior convictions.
In Apprendi, the Supreme Court ruled that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[16] In carefully articulating this prior conviction exception, the Apprendi court reviewed its earlier decision in Almendarez-Torres v. United States,[17] which held that a statute permitting the use of a prior conviction to increase the maximum sentence for illegal aliens reentering United States after deportation constituted a penalty provision and did not define a separate crime that must be charged in the indictment. Noting the traditional role accorded recidivism in sentencing, the certainty that procedural safeguards had attached to the "fact" of prior convictions, and the defendant's failure to challenge the accuracy of his criminal history, the court expressly declined to overrule Almendarez-Torres:
Even though it is arguable that Almendarez-Torres was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, Apprendi does not contest the decision's validity and we need not revisit it for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset. Given its unique facts, it surely does not warrant rejection of the otherwise uniform course of decision during the entire history of our jurisprudence.[18]
In Blakely, the Court clarified the meaning of the term "statutory maximum,"[19] but expressly included the prior conviction exception in its recitation of the Apprendi rule.[20] Consequently, under Almendarez-Torres, Apprendi, and Blakely, a judge may, consistent with the Sixth Amendment and due *841 process, impose an enhanced sentence based on the fact of a prior conviction. Alkire's exceptional sentence fell squarely within the narrow exception for prior convictions recognized by Apprendi and Blakely.[21]
Alkire invites this court to abandon the "crumbling foundation" of Almendarez-Torres and the prior conviction exception, citing Justice Thomass concurrence in Apprendi characterizing his position in Almendarez-Torres as erroneous.[22] But the Apprendi majority unambiguously declined to overrule Almendarez-Torres. Other courts, including our own Supreme Court, have uniformly held that Apprendi did not overrule Almendarez-Torres.[23] Nothing in Blakely purports to modify the "prior conviction" exception. Almendarez-Torres remains good law, and we decline to rely upon speculation about its future. Prior convictions need not be proved to a jury.
Finally, Alkire contends that the clearly too lenient determination was improper because it involved the sentencing courts exercise of discretion. He argues that the courts weighing of facts in deciding whether to impose an exceptional sentence amounts to improper judicial fact-finding.
This argument confuses the question of what facts must be found before a particular sentence is authorized, with the question of what punishment should be imposed within the range authorized by those facts. Apprendi and Blakely are concerned only with the former question. The latter involves the exercise of the sentencing courts discretion. The Apprendi court confirmed the broad discretion accorded to sentencing judges:
We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretiontaking into consideration various factors relating both to offense and offenderin imposing a judgment within the range prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing a judgment within statutory limits in the individual case.[24]
The Blakely court also made clear that its decision did not diminish judges' sentencing discretion within the authorized range.[25]
The jury's determination that Alkire committed two new crimes and the numerous prior convictions giving him an offender score not accounted for in the sentencing grid were the only relevant facts necessary to authorize an exceptional sentence under the statute. Once those facts were established, the statutes gave the court discretion to impose a higher penalty. The court merely fixed the punishment within the authorized range. Exercising judicial discretion within the range authorized by law is not fact-finding. The exercise of sentencing discretion is not a fact that must be submitted to a jury under Apprendi and Blakely.
Alkire's due process and Sixth Amendment rights were not violated, and we affirm his sentence.[26]
WE CONCUR: COX, C.J., and AGID, J.
NOTES
[1] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); Blakely v. Washington, ___ U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[2] ___ Wash.App. ___, 99 P.3d 902 (2004).
[3] RCW 9.94A.505.
[4] RCW 9.94A.525. Here, the offender score was based exclusively upon Alkire's current and past convictions.
[5] RCW 9.94A.510.
[6] See Blakely, 124 S.Ct. at 2537.
[7] RCW 9.94A.589.
[8] RCW 9.94A.589.
[9] State v. Borg, 145 Wash.2d 329, 337, 36 P.3d 546 (2001).
[10] RCW 9.94A.535.
[11] RCW 9.94A.535(2)(i).
[12] State v. Fisher, 108 Wash.2d 419, 428, 739 P.2d 683 (1987).
[13] State v. Smith, 123 Wash.2d 51, 56 n. 4, 864 P.2d 1371 (1993).
[14] Id. at 56, 864 P.2d 1371 (quoting State v. Stephens, 116 Wash.2d 238, 243, 803 P.2d 319 (1991)). We reject Alkire's contention, expressed for the first time at oral argument, that Smith conflicts with Blakely and with State v. Batista, 116 Wash.2d 777, 808 P.2d 1141 (1991). Nothing in Batista supports his assertion that the clearly too lenient determination is essentially a finding of fact; indeed, the Batista court characterizes the determination as a conclusion of law. Id. at 788, 808 P.2d 1141. Smith merely expresses the only logical application of the clearly too lenient provision when the defendant's past and current convictions exceed the number recognized by the guidelines. We see no inconsistency in these decisions.
[15] See State v. Van Buren, ___ Wash.App. ___, 98 P.3d 1235 (2004) (calculation of offender score is not a question of fact).
[16] 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (emphasis added).
[17] 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).
[18] Apprendi, 530 U.S. at 489-90, 120 S.Ct. 2348 (footnote omitted).
[19] "Our precedents make clear, however, that the statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jurys verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." Blakely, 124 S.Ct. at 2537 (citations omitted).
[20] Blakely, 124 S.Ct. at 2536.
[21] Because the clearly too lenient factor as applied here falls within the narrow exception for prior convictions articulated in Apprendi, we have no occasion to explore the scope of the exception in other contexts. See, e.g., State v. Ortega, 120 Wash.App. 165, 169, 84 P.3d 935 (2004) (relevant qualifying facts of prior conviction were not found by a jury beyond a reasonable doubt, and thus could not be used to enhance the penalty for a subsequent conviction under Apprendi).
[22] See Apprendi, 530 U.S. at 499-523, 120 S.Ct. 2348.
[23] See State v. Smith, 150 Wash.2d 135, 142, 75 P.3d 934 (2003), cert. denied, ___ U.S. ___, 124 S.Ct. 1616, 158 L.Ed.2d 256 (2004); State v. Wheeler, 145 Wash.2d 116, 123, 34 P.3d 799 (2001); see also United States v. Mancia-Perez, 331 F.3d 464, 470 (5th Cir.), cert. denied, 540 U.S. 935; 124 S.Ct. 358, 157 L.Ed.2d 245 (2003); People v. Thomas, 91 Cal.App.4th 212, 110 Cal.Rptr.2d 571 (2001).
[24] Apprendi, 530 U.S. at 481, 120 S.Ct. 2348.
[25] See Blakely, 124 S.Ct. at 2538 n. 8.
[26] Alkire also contends that RCW 43.43.754, which required him to provide a biological sample for DNA identification, violated his Fourth Amendment right against unreasonable searches. This issue is controlled by our recent decision in State v. Surge, 122 Wash.App. 448, 94 P.3d 345 (2004) in which we rejected an identical argument. See also State v. S.S., 122 Wash.App. 725, 94 P.3d 1002 (2004) (cheek swabs are authorized method of collecting biological samples for the DNA databank).