[Nos. 53322-3-I; 53875-6-I.   Division One.   February 28, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. DARRELL GREGORY JONES, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. REGINALD THOMAS, *Appellant*.

---

*Jason B. Saunders* (of *Washington Appellate Project*), for appellant Jones.

*Maureen M. Cyr* and *Corey M. Endo* (of *Washington Appellate Project*), for appellant Thomas.

*Norm Maleng, Prosecuting Attorney,* and *Amy R. Holt, Deputy,* for respondent.

¶1 Cox, C.J. — " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' "[1] Whether one convicted of a crime was on community placement at the time of the offense is a fact that does not fall within the narrow exception of a "prior conviction" for purposes of *Blakely v. Washington.*[2] Because the offender scores of Darrell Jones and Reginald Thomas were improperly based on judicial findings of fact that they were on community placement at the time of their current offenses, we reverse the sentences in these consolidated appeals.[3]

¶2 Jones was convicted of possession of cocaine discovered during a search incident to his arrest for obstructing a law enforcement officer. He had set off a municipal court's metal detector when he tried to enter the building. He then refused to cooperate with the courthouse guard's attempt to clear him. Following his conviction, the State calculated Jones' offender score as 7. This score included one point based on the State's contention that Jones was on community placement at the time of the offense. At sentencing, Jones expressly challenged the additional point. Relying on

---

[1] *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 2536, 159 L. Ed. 2d 403 (2004) (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)).

[2] *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[3] We grant Jones' motion to adopt and rely upon Thomas' reply brief. We also grant the State's motion to file a "sur-reply" in answer to the arguments raised for the first time in Thomas' reply brief.

records from the Department of Corrections (DOC), the sentencing judge found that Jones had been on community placement at the time of his crime. The judge sentenced Jones to an alternative drug offender sentence of 12.75 months of confinement to be followed by 12.75 months of community custody.

¶3 Thomas was convicted of second degree assault for kicking a man in the head. The sentencing judge accepted the State's contention that Thomas' offender score was 8, a score that included one point based on the assertion that he was on community placement at the time of his offense. Unlike Jones, Thomas did not contest the finding. The judge sentenced Thomas to 60 months of confinement to be followed by 18 to 36 months of community custody.

¶4 Jones and Thomas appealed their sentences, each contending that the judicial finding that he was on community placement violated *Blakely*. We consolidated the cases.

## COMMUNITY PLACEMENT AND PRIOR CONVICTIONS

¶5 Jones and Thomas both argue that a jury, not a judge, must make the factual determination beyond a reasonable doubt whether they were on community placement at the time of their crimes. Specifically, they contend that this is a factual determination that is not within the narrow "prior conviction" exception set forth in *Blakely*. We agree.

¶6 The issue in *Blakely* was whether a judge's factual determinations that supported the imposition of an exceptional sentence violated the Sixth Amendment. While standard range sentences, not exceptional sentences, are at issue in these appeals, the principle of *Blakely* nonetheless applies to the findings at issue here.

¶7 In *Blakely*, the United States Supreme Court held the high end of a Sentencing Reform Act of 1981, chapter 9.94A RCW, standard range was the "relevant 'statutory maximum'" because that was all that could

lawfully be imposed based solely on the jury's finding of guilt.[4] Here, RCW 9.94A.525(17) provides that a judge will increase a defendant's offender score by one point if the offender was on community placement at the time of the current conviction.[5] Although the increase in the score does not result in an exceptional sentence, the added point increases the applicable standard range—the relevant statutory maximum. Thus, unless the community placement findings fall within the "fact of a prior conviction" exception, such findings must be made by a jury and determined beyond a reasonable doubt.

¶8 *Almendarez-Torres v. United States*[6] addressed the role of recidivism in sentencing. There, the defendant was convicted of illegal reentry to the United States after an earlier conviction for aggravated felonies followed by deportation. Whether the indictment for the current crime was required to contain an allegation that the prior conviction was for aggravated felonies was the issue before the Supreme Court. The Court held that prior convictions are sentence enhancements, not elements of the crime charged in that proceeding. Thus, it was not necessary to plead the prior convictions in the indictment.

¶9 During its next term, the United States Supreme Court discussed *Almendarez-Torres* in its *Jones v. United States*[7] decision. The Court stated "[U]nlike virtually any other consideration used to enlarge the possible penalty for an offense . . . a prior conviction must itself have been established through procedures satisfying the . . . jury trial guarantees."[8]

---

[4] *Blakely*, 542 U.S. at 303.

[5] "The offender score is the sum of points accrued under this section rounded down to the nearest whole number . . . . (17) If the present conviction is for an offense committed while the offender was under community placement, add one point."

[6] 523 U.S. 224, 247, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998).

[7] 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999).

[8] 526 U.S. at 249.

¶10 In *Apprendi v. New Jersey*,[9] the United States Supreme Court squarely addressed the extent to which the Sixth Amendment applied to sentencing. There, a New Jersey statute authorized judges to increase a defendant's sentence if they found by a preponderance of evidence that defendants acted with a purpose to intimidate because of race. The Court concluded that the statute violated the defendant's Fourteenth Amendment due process rights and Sixth Amendment jury trial right because there was no meaningful distinction between elements and sentencing factors for purposes of the right to a jury trial. However, the Court articulated an exception to this constitutional rule for "the fact of a prior conviction."[10]

¶11 The *Apprendi* Court again reviewed *Almendarez-Torres*. Noting the traditional usage of recidivism facts for sentence enhancements, the procedural safeguards that attended the "fact" of those convictions, and the defendant's agreement to the accuracy of his criminal history, the Court declined to overrule *Almendarez-Torres*:

> Both the certainty that procedural safeguards attached to any "fact" of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that "fact" in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a "fact" increasing punishment beyond the maximum of the statutory range . . . .
>
> Even though it is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, *Apprendi* does not contest the decision's validity and we need not revisit it for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset. Given its unique facts, it surely does not warrant rejection of the otherwise uniform course of decision during the entire history of our jurisprudence.[11]

---

[9] 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[10] *Apprendi*, 530 U.S. at 488-90.

[11] *Apprendi*, 530 U.S. at 488-90 (footnotes omitted).

¶12 Although the above statement in *Apprendi* questioned the rationale of *Almendarez-Torres*, *Blakely* expressly retained the prior conviction exception precisely as articulated in *Apprendi*. We, accordingly, reject Jones' and Thomas' contention that the above quotation and Justice Thomas' apparent change of heart regarding *Almendarez-Torres* give reason to doubt the exception's continued viability.[12] As we recently held in rejecting the same argument in another case, the exception remains and "we decline to rely upon speculation about its future."[13]

■ ¶13 The question we must decide is whether the fact that a defendant was on community placement for a prior crime at the time of his present crime is within the narrow prior conviction exception. We conclude that it is not.

¶14 "Community placement" is defined by RCW 9.94A-.030(7) as

> that period during which the offender is subject to the conditions of community custody and/or postrelease supervision, *which begins either upon completion of the term of confinement (postrelease supervision) or at such time as the offender is transferred to community custody in lieu of earned release.* Community placement may consist of entirely community custody, entirely postrelease supervision, or a combination of the two.[14]

¶15 "Community custody," in turn, is defined in RCW 9.94A.030(5) as

> that portion of an offender's sentence of confinement in lieu of earned release time or imposed pursuant to RCW 9.94A-.505(2)(b), 9.94A.650 through 9.94A.670, 9.94A.690, 9.94A.700 through 9.94A.715, or 9.94A.545, served in the community subject to controls placed on the offender's movement and activities by the department. . . .

¶16 The plain words of these statutes make clear that community placement begins after confinement. And

---

[12] *See Apprendi*, 530 U.S. at 520 (Thomas, J. concurring).

[13] *See State v. Alkire*, 124 Wn. App. 169, 176-78, 100 P.3d 837, 841 (2004).

[14] (Emphasis added.)

whether one is on community custody or community placement, the additional point is added to an offender score.[15]

¶17 More importantly, whether one convicted of an offense is on community placement or community custody at the time of the current offense cannot be determined from the fact of a prior conviction. Too many variables are involved.

¶18 For example, a defendant may receive credit for preconviction incarceration, the length of which may not be specified in the judgment and sentence. The defendant may receive additional credit for preconviction incarceration if the local detention facility awarded him good conduct time.[16] And even if both of these determinations are in the relevant judgment and sentence, there is no possible way for the sentence to reflect whether the defendant will eventually become entitled to "[e]arned release time" under RCW 9.94A.728, which may be as much as 50 percent of the sentence imposed. Moreover, under RCW 9.94A.728(2)(d), the DOC may deny release to community custody status for some offenses even if a defendant has obtained "earned release" if the DOC does not approve of the defendant's living arrangements. Thus, the fact of the prior conviction does not establish when community placement actually begins.

¶19 When community placement ends can also vary. Under RCW 9.94A.715(1), defendants may receive community custody in terms of a range of months "or up to the period of earned release . . . whichever is longer."[17] The high and low end of the range can differ by as much as two

---

[15] *See State v. Reed,* 116 Wn. App. 418, 423-24, 66 P.3d 646, *review denied,* 150 Wn.2d 1013 (2003); *State v. Crandall,* 117 Wn. App. 448, 71 P.3d 701 (2003).

[16] *See In re Pers. Restraint of Mota,* 114 Wn.2d 465, 474, 788 P.2d 538 (1990) (equal protection requires good-time credit be granted for presentence incarceration).

[17] RCW 9.94A.715(1) (sex offenses, violent offenses, any crime against a person or any felony drug offense).

years.[18] Under RCW 9.94A.715(4), it is the DOC, not the sentencing court, that determines where in the range the defendant's term falls.[19]

¶20 Jones' case illustrates the point we make here. At sentencing, both the State and the sentencing judge relied on DOC records, not the judgment and sentence for the prior offense, to determine whether he was on community placement at the time of his current offense.

¶21 In short, whether one convicted of a crime is on community placement at the time of the offense is a factual determination subject to the Sixth Amendment requirement that a jury make the determination beyond a reasonable doubt.

¶22 Recognizing that the community placement question does not strictly come within the plainly stated exception in *Apprendi* and *Blakely*, the State takes the position that the exception actually applies to "the broader issue of recidivism" and "recidivism findings[.]" We disagree.

¶23 The State quotes the description in the majority opinion in *Ring v. Arizona*[20] of the "tightly delineated" issue in that case to suggest the prior conviction exception actually covers any "aggravating circumstance related to past convictions[.]"[21] We do not read that language to alter *Blakely*'s and *Apprendi*'s consistent plain language formulation of the exception as covering only "the fact of a prior conviction."[22] The State's resort to an expansive view of the underlying facts of *Almendarez-Torres* is unpersuasive for the same reason. The Supreme Court in *Apprendi* expressly

---

[18] *See, e.g.*, WAC 437-20-010 (24-48 months presumptive range of community custody for serious violent offenses).

[19] *See State v. Pharris*, 120 Wn. App. 661, 665, 86 P.3d 815 (2004).

[20] *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002).

[21] *Ring*, 536 U.S. at 597 n.4.

[22] *Blakely*, 542 U.S. at 301.

characterized *Almendarez-Torres* as providing a "narrow exception."[23]

¶24 We also reject the State's reliance on the language in *Apprendi* about the use of traditional sentencing factors. Such a characterization of what is at issue does nothing to overcome the clear dictates of *Apprendi* and its progeny.

¶25 The State also cites a number of out-of-state cases to support its contention that the exception is not so narrow that a court may only find that a defendant had a prior conviction without generally considering facts surrounding it.[24] But even if we interpret these cases the way the State suggests, we are simply unpersuaded by its argument.

¶26 The chief problem with the State's approach is that it offends the basic reason for the fundamental rule of *Apprendi* and *Blakely*: ensuring that the procedural protections afforded by the Sixth Amendment apply to factual determinations that may increase a sentence. No such safeguards exist here for the determination of whether the defendants were on community placement at the times of their offenses. As Division Three of this court recognized in *State v. Ortega*,[25] the determination of "facts of a prior conviction that are not specified in the indictment, judgment, jury instructions, or verdict" do not bear the same procedural protections as facts necessarily determined by the jury's verdict.[26] Thus, such determinations are not within the narrow exception the cases dictate.

¶27 The State's unsupported contention that "[a] defendant's status on community placement bears the same certainty and procedural safeguards as the fact of the

---

[23] *Apprendi*, 530 U.S. at 490.

[24] *See, e.g., People v. George*, 122 Cal. App. 4th 419, 18 Cal. Rptr. 3d 651 (2004); *State v. Abdullah*, 372 N.J. Super. 252, 858 A.2d 19, *cert. granted*, 863 A.2d 365 (N.J. 2004); *United States v. Palomino-Rivera*, 258 F.3d 656 (7th Cir. 2001); *Jones v. State*, 138 Md. App. 12, 769 A.2d 1015 (2001); *Carson v. State*, 813 N.E.2d 1187 (Ind. Ct. App. 2004); *People v. Thomas*, 91 Cal. App. 4th 212, 110 Cal. Rptr. 2d 571 (2001); *but see State v. Perez*, 196 Or. App. 364, 102 P.3d 705 (2004).

[25] 120 Wn. App. 165, 84 P.3d 935 (2004).

[26] *Ortega*, 120 Wn. App. at 172.

conviction itself" is simply contrary to law. As discussed above, whether a defendant is on community placement on a given date is largely determined by the DOC's view of the defendant's prison behavior.

¶28 The State also cites *State v. Van Buren*,[27] in which a panel from Division Two of this court held that "[t]he calculation of a defendant's offender score is not a factual matter for the jury and thus is properly determined by the sentencing judge."[28] That case is distinguishable.

¶29 In *Van Buren*, the court considered an exceptional sentence based on the stipulated finding that the defendant had an offender score greater than 9 and had committed more than one offense. With such a score, an exceptional sentence was justified because otherwise the defendant would receive a "free crime."[29] Accordingly, the only facts relevant to the sentence were stipulated. While the *Van Buren* court noted the trial court erred in its legal calculation of the offender score by assigning one point rather than two because the defendant was on community placement, that statement does not affect the issue here. Here, we address the fact question of whether the defendant was on community placement at the time of the current offense, not the legal question of the number of points added to the offender score because of that finding.

¶30 The determinations by the sentencing judges that the defendants were on community placement at the times of the current offenses do not fall within the narrow exception for the fact of a prior conviction stated by the Supreme Court in *Blakely*.

## HARMLESS ERROR

¶31 The State argues that any error under *Blakely* was harmless beyond a reasonable doubt, correctly noting

---

[27] 123 Wn. App. 634, 98 P.3d 1235 (2004).

[28] *Van Buren*, 123 Wn. App. at 646.

[29] *Van Buren*, 123 Wn. App. at 652; *see State v. Stephens*, 116 Wn.2d 238, 803 P.2d 319 (1991); *State v. Smith*, 123 Wn.2d 51, 864 P.2d 1371 (1993).

that the majority of courts considering the issue of harmless error in this context have concluded that errors under *Apprendi* can be harmless under *Neder v. United States*[30] or *United States v. Cotton*.[31] But binding precedent from the state supreme court dictates otherwise.

¶32 In *State v. Thomas*,[32] our Supreme Court considered whether harmless error analysis applied to instructional errors in a death penalty case. The court decided that a *Neder* harmless error analysis applied to the accomplice liability and "to convict" instructions.[33] The court then considered whether harmless error analysis was "available for an erroneous 'to convict' instruction in cases involving aggravating circumstances."[34] Based on *Apprendi* and *Ring*, the court concluded, that "[t]o do a harmless error analysis to uphold Thomas's death sentence and conviction for aggravated first degree murder would be *to find facts that . . . increase the penalty for the crime charged beyond the statutory maximum . . . .*"[35] The court concluded that a death sentence and a sentence of life without the possibility of parole are both increased sentences as compared with life with the possibility of parole in capital

---

[30] 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (holding omission of "materiality" element from jury instructions was harmless). *See, e.g., United States v. Joyner*, 313 F.3d 40 (2d Cir. 2002); *United States v. Matthews*, 312 F.3d 652 (5th Cir. 2002); *United States v. Zidell*, 323 F.3d 412 (6th Cir.), *cert. denied*, 540 U.S. 824 (2003); *United States v. Nance*, 236 F.3d 820, 825-26 (7th Cir. 2000), *cert. denied*, 534 U.S. 832 (2001); *United States v. Sanchez-Cervantes*, 282 F.3d 664 (9th Cir. 2002); *United States v. Candelario*, 240 F.3d 1300, 1307 (11th Cir.), *cert. denied*, 533 U.S. 922 (2001); *People v. Thurow*, 203 Ill. 2d 352, 786 N.E.2d 1019, 272 Ill. Dec. 185 (2003); *but see State v. Fero*, 125 Wn. App. 84, 104 P.3d 49 (2005) (*Blakely* error "structural" and therefore not subject to harmless error analysis); *State v. Allen*, 166 N.C. App. 139, 149, 601 S.E.2d 299, 306 (2004) (*Blakely* error not harmless based on pre-*Apprendi* North Carolina authority).

[31] 535 U.S. 625, 632-33, 122 S. Ct. 1781, 1786, 152 L. Ed. 2d 860 (2002) (holding that *Apprendi* error did not "seriously affect the fairness, integrity or public reputation of judicial proceedings").

[32] 150 Wn.2d 821, 83 P.3d 970 (2004).

[33] *Thomas*, 150 Wn.2d at 845.

[34] *Thomas*, 150 Wn.2d at 847.

[35] *Thomas*, 150 Wn.2d at 849 (emphasis added).

cases.[36] Thus, the court determined that a jury, not a court, must make the factual determinations beyond a reasonable doubt and harmless error could not be applied to those facts. In light of *Thomas*, we reject the State's argument to apply harmless error analysis in this case—an argument that is more properly directed to the state supreme court.[37]

¶33 We reverse the sentences in these cases and remand for resentencing. The balance of this opinion has no precedential value. Accordingly, pursuant to RCW 2.06.040, it shall not be published.

GROSSE and BECKER, JJ., concur.

Review granted at 155 Wn.2d 1017 (2005).

---

[36] *Thomas*, 150 Wn.2d at 848-49.

[37] Accordingly, it is unnecessary to discuss the recent decision from a divided panel of Division Two of this court that addresses the harmless error question without considering *Thomas*. *See State v. Fero*, 125 Wn. App. 84, 104 P.3d 49 (2005).