[No. 30390-6-II.   Division Two.   February 23, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES JOSEPH BRUNDAGE, *Appellant*.

56

58

*Eric M. Fong* (of *Rovang Fong & Associates*) and *Jeremy A. Morris* (of *Bishop Whitemiersma Marshall, P.S.*), for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Randall A. Sutton, Deputy*, for respondent.

¶1 HOUGHTON, J. — A jury convicted James Brundage of multiple crimes stemming from an attack on his wife, D.E.B. He appeals, arguing numerous trial court errors. In supplemental briefing, he also claims that his exceptional sentences violate the Sixth Amendment under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). We affirm.

FACTS

¶2 Brundage and D.E.B. met and began dating in 1992. They married in August 1999. During their relationship, they had two children.

¶3 Due to marital difficulties, D.E.B. left the couple's home in September 2002. D.E.B. left some possessions at the house, including a rented washer and dryer. She and

Brundage arranged to remove the appliances on October 18, 2002. When D.E.B. arrived, she exited her car and left her then two-year-old daughter, Sadie, in a car seat.

¶4 D.E.B. entered the basement to move boxes into a storage area in the garage. When she went into the storage room, Brundage followed, shutting the door. She told him to let her out, to which he responded, " 'I just want to talk to you.' " 1 Report of Proceedings (RP) at 53.

¶5 D.E.B. walked to the door, but the doorknob had been removed and she could not exit. After Brundage tried to restrain her from leaving, she grabbed a board and Brundage grabbed a pipe. Both eventually dropped the objects.

¶6 Brundage became very angry, pushed D.E.B. to the ground, and held her there by pressing her shoulders down. He then raped her vaginally and anally.

¶7 Afterward, Brundage placed D.E.B.'s hands behind her back and handcuffed them to a post. He tied her feet with rope and placed silver tape around her mouth and head. While binding her, he apologized.

¶8 Brundage then left and returned with Sadie and a bag of pills. He told D.E.B. that if she took the pills, she would fall asleep, he would leave, and Sadie would be there when D.E.B. awoke. If she refused, he would not let her go. D.E.B. swallowed the pills.

¶9 D.E.B. awoke in a car trunk. Brundage stopped the car at an abandoned cabin-style motel. He led her into the back of a cabin, where two mattresses were on the floor. She saw a silver Rueger firearm and a case. She knew that Brundage kept his shotgun in the case. She feared that he would use one of the weapons on her.

¶10 D.E.B. asked about Sadie. Brundage told her that Sadie was "safe." 1 RP at 80. When D.E.B. asked Brundage why he had done this, he responded that he wanted to spend one more night together.

¶11 During the following 24 hours, Brundage raped D.E.B. three more times. In between the rapes, he talked

about his need to "get away" and said, " 'Maybe I should go to Mexico.' " 1 RP at 90. At one point, he pointed a gun at his chest. He placed D.E.B.'s hands on the gun, telling her to shoot him. She did not pull the trigger.[1] Brundage eventually unbound D.E.B. and left. She escaped and reported the crimes to the police. Brundage later turned himself in to authorities.

¶12 By sixth amended information, the State charged Brundage with the following: (1) one count of first degree rape with deadly weapon and domestic violence special allegations; (2) three counts of first degree rape with firearm and domestic violence special allegations; (3) one count of first degree rape; (4) one count of first degree kidnapping with firearm, domestic violence, and sexual motivation special allegations; (5) two counts of first degree unlawful possession of a firearm; (6) seven counts of violation of a court order with domestic violence special allegations; and (7) one count of first degree child molestation.[2]

¶13 A jury convicted Brundage of 11 counts: (1) second degree rape with a domestic violence special allegation (count I), (2) first degree rape with firearm and domestic violence special allegations (count II), (3) second degree kidnapping with firearm and domestic violence special allegations (count V),[3] (4) unlawful possession of a firearm (count VI), and (5) seven counts of violating a court order with domestic violence special allegations (counts VIII-XIV).

¶14 The trial court imposed a minimum and maximum sentence under RCW 9.94A.712. For the first and second degree rape charges, Brundage's offender score was 12.[4] On

---

[1] At trial, D.E.B. testified that she did not shoot him because she did not "think [she] could kill somebody." 1 RP at 104.

[2] On the State's motion, the trial court dismissed the first degree rape (of A.L.R.) and first degree child molestation charges without prejudice on March 28, 2003.

[3] At sentencing, the court ruled that the second degree kidnapping conviction merged with the first degree rape conviction.

[4] Brundage affirmatively agreed to his offender score calculation. He does not challenge this calculation on appeal.

the first degree rape count, his initial standard range was 240 to 318 months.[5] As a result of the firearm and domestic violence enhancements, it became 300 to 378 months. For the second degree rape, his standard range was 210 to 280 months.[6] The statutory maximum term for both rape charges was life imprisonment.

¶15 The trial court imposed exceptional minimum sentences of 400 months on count I and 498 months on count II. In its written findings and conclusions, it stated that the exceptional sentences were justified because (1) the presumptive sentence was "clearly too lenient" under the multiple offense policy; (2) Brundage's conduct manifested "deliberate cruelty" to the victim; and (3) the current offenses involved domestic violence and (a) were part of an ongoing pattern of physical, psychological, or sexual abuse manifested by multiple incidents over a prolonged period of time, (b) occurred within the sight or sound of Brundage's and the victim's minor child, and (c) Brundage's conduct manifested "deliberate cruelty" or intimidation of the victim. Clerk's Papers (CP) at 614-15. The trial court expressly stated that it would impose the same sentence even if only one of the grounds listed were valid. Finally, the trial court imposed the statutory maximum sentence of life.

¶16 Brundage appeals on multiple grounds.[7]

ANALYSIS

Exceptional Sentence

¶17 Brundage contends that his exceptional minimum sentences must be vacated in light of *Blakely*. As we

---

[5] The judgment and sentence states that the standard range for count II was 240 to 238 months. This represents a scrivener's error. *See* RCW 9.94A.510 (under the sentencing grid, when a defendant has an offender score of 9 or more and commits a crime with a seriousness level of XII, the standard range is 240 to 318 months).

[6] Although the second degree rape count carried a domestic violence special sentence enhancement, the trial court did not increase Brundage's standard range to reflect this.

[7] We allowed supplemental briefing addressing the effect of *Blakely* on Brundage's exceptional sentence.

recently held in *State v. Borboa*, 124 Wn. App. 779, 787, 102 P.3d 183, 187 (2004), an exceptional minimum sentence imposed under RCW 9.94A.712 is subject to *Blakely*. Nevertheless, we affirm under the "free crimes" doctrine.

## Overview of RCW 9.94A.712

¶18 RCW 9.94A.712[8] governs the sentencing of certain nonpersistent offenders, including those who commit first and second degree rape. RCW 9.94A.712(1)(a)(i).

¶19 If the defendant is subject to sentencing under this statute, the trial court shall impose both a minimum and maximum sentence. RCW 9.94A.712(3). The maximum sentence is the statutory maximum sentence for the offense. RCW 9.94A.712(3). When imposing a minimum term, the court may impose either a standard range sentence or an exceptional sentence under RCW 9.94A.535.[9] RCW 9.94A.712(3).

---

[8] RCW 9.94A.712 provides:

(1) An offender who is not a persistent offender shall be sentenced under this section if the offender:

(a) Is convicted of:

(i) Rape in the first degree, rape in the second degree . . .

. . . .

(3) Upon a finding that the offender is subject to sentencing under this section, the court shall impose a sentence to a maximum term consisting of the statutory maximum sentence for the offense and a minimum term either within the standard sentence range for the offense, or outside the standard sentence range pursuant to RCW 9.94A.535, if the offender is otherwise eligible for such a sentence.

[9] Governing departures from the sentencing guidelines, RCW 9.94A.535 provides in part:

The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence. . . . An exceptional sentence imposed on an offender sentenced under RCW 9.94A.712 shall be to a minimum term set by the court and a maximum term equal to the statutory maximum sentence for the offense of conviction under chapter 9A.20 RCW.

. . . .

The following are illustrative factors which the court may consider in the exercise of its discretion to impose an exceptional sentence. . . .

¶20 At the expiration of the standard range or exceptional minimum term, the Indeterminate Sentence Review Board (the Board) conducts a hearing. RCW 9.95.420(3)(a). The offender shall be released, subject to the Board's conditions, "unless the board determines by a preponderance of the evidence that, despite such conditions, it is more likely than not that the offender will commit sex offenses if released." RCW 9.95.420(3)(a). If the Board does not release the offender, it establishes a new minimum term, not to exceed two years. RCW 9.95.420(3)(a).

¶21 We recently summarized the features of RCW 9.94A.712 in *Borboa*:

First, it requires the sentencing court to set a minimum term that may be standard or exceptional. Second, it permits the Indeterminate Sentence Review Board to set a second minimum term which, if imposed, takes effect at the end of the court's minimum term. Third, it requires the sentencing court to set a maximum term that equals the statutory maximum sentence. The defendant must serve each minimum term that is imposed, but he need not serve the maximum term unless the minimum terms happen to equal it. Instead of being a sentence that the defendant must actually serve, the maximum term is merely a limitation on the combined total of the court's and the Board's minimum terms. Indeed, it is a limitation that

. . . .

(2) Aggravating Circumstances

(a) The defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim.

. . . .

(h) The current offense involved domestic violence . . . and one or more of the following was present:

(i) The offense was part of an ongoing pattern of psychological, physical, or sexual abuse of the victim manifested by multiple incidents over a prolonged period of time;

(ii) The offense occurred within sight or sound of the victim's or the offender's minor children under the age of eighteen years; or

(iii) The offender's conduct during the commission of the current offense manifested deliberate cruelty or intimidation of the victim.

(i) The operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010.

simply reiterates in the context of RCW 9.94A.712 what is already in the statutes elsewhere: that in general neither the court nor the Board shall maintain jurisdiction over the defendant for more than life if the crime is a Class A felony, for more than ten years if the crime is a Class B felony, or for more than five years if the crime is a Class C felony.

124 Wn. App. 783-84 (citing RCW 9A.20.010-.020).

¶22 Against this background, we consider the application of *Blakely* to Washington's determinate-plus sentencing scheme.

## Application of *Blakely*

¶23 Brundage argues that the trial court imposed his exceptional minimum sentences based on facts not submitted to the jury and, thus, the sentences must be vacated under *Blakely*.[10] The State counters that *Blakely* does not apply because "the exceptional term of [Brundage's] sentence did not increase the statutory maximum for his offense, which was and remained life imprisonment."[11] Resp't's Suppl. Br. at 4.

¶24 In *Borboa,* we held that the trial court's imposition of an exceptional minimum sentence under RCW 9.94A-.712, based on facts it found by a preponderance of the evidence, was unconstitutional under *Blakely*. *Borboa*, 124 Wn. App. 787-88; *but see State v. Clarke*, 124 Wn. App. 893, 903-04, 103 P.3d 262, 266 (2004) (filed a few weeks after *Borboa*, this Division One case held that the imposition of an exceptional minimum sentence under RCW 9.94A.712 does not violate the Sixth Amendment). Therefore, unless

---

[10] As to his maximum sentence, Brundage states that the *"Apprendi/Blakely* rule and the [Sentencing Reform Act of 1981, chapter 9.94A RCW] are satisfied by [his] 'maximum term' because the 'maximum term' of his sentence is based solely on the jury's verdict and the mandates of RCW 9.94A.712." Appellant's Suppl. Br. at 6; *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[11] As a threshold matter, the State assumes that *Blakely* presents a new rule and Brundage may raise *Blakely* issues because his direct appeal is not final. We agree. *See State v. Van Buren*, 123 Wn. App. 634, 639, 98 P.3d 1235 (2004) (holding that *"Blakely* applies to all cases in which review was not final on June 24, 2004.")

the trial court based the exceptional minimum sentences on an aggravating factor valid under *Blakely*, these sentences are unconstitutional.

### Free Crimes Doctrine

¶25 We next examine whether any of the trial court's stated aggravating factors support the exceptional sentences.[12] The State urges us to apply the "free crimes" doctrine as an aggravator not affected by the *Blakely* decision. In response, Brundage claims that his standard range sentence of 300 to 378 months punished him for all three current offenses. We agree with the State.

¶26 As we recently held in *State v. Van Buren*, 123 Wn. App. 634, 98 P.3d 1235 (2004), a trial court's imposition of an exceptional sentence under the "free crimes" doctrine does not violate the Sixth Amendment:

> "Free crime" analysis is a function of determining the defendant's offender score from the record of his prior and current criminal convictions. It does not require weighing evidence, determining credibility, or making a finding of disputed facts. Thus, it is not affected by the *Blakely* requirement that factual issues used to impose an exceptional sentence must be pleaded and proved to a jury beyond a reasonable doubt.

*Van Buren*, 123 Wn. App. at 653 (footnote and emphasis omitted); *see also State v. Alkire*, 124 Wn. App. 169, 176, 100 P.3d 837 (2004) (Division One opinion holding that when defendant had offender scores of 20 and 21, his "exceptional sentence fell squarely within the narrow exception for prior convictions recognized by *Apprendi* [*v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)] and *Blakely*").

¶27 As authorized by statute, the trial court imposed an exceptional sentence based on Brundage's extensive criminal history and the existence of his current convictions. These bases remain valid under *Blakely*. Thus, we turn to

---

[12] The State does not argue that the "deliberate cruelty" or "domestic violence" factors remain valid, post *Blakely*.

whether the trial court erred when it applied the "free crimes" doctrine.

¶28 The trial court may impose a sentence outside the standard range only if there are "substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. The legislature created a nonexclusive list of illustrative factors that support an exceptional sentence. RCW 9.94A.535. One such aggravating circumstance exists if "[t]he operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010." RCW 9.94A.535(2)(i).

¶29 Division One recently summarized the function and purpose of the multiple offense policy:

> If a defendant commits multiple offenses and those are sentenced together, they are counted as current offenses, and the offender score calculation for each crime includes the others, thereby increasing the offender score and, in consequence, increasing the standard sentence range for each current offense. Recognizing this, the standard range contemplates that sentences for current offenses will be served concurrently, with the offender score serving as the vehicle for ensuring accountability on each offense. This scheme is known as the multiple offense policy. Its purpose is "to limit the consequences of multiple convictions stemming from a single act."

*Alkire*, 124 Wn. App. at 173 (footnotes omitted) (quoting *State v. Borg*, 145 Wn.2d 329, 337, 36 P.3d 546 (2001)).

¶30 Given the purpose of the multiple offense policy, a standard range sentence is not "clearly too lenient" simply because the defendant has an offender score greater than 9. *State v. Stephens*, 116 Wn.2d 238, 246, 803 P.2d 319 (1991). Instead, the trial court may impose an exceptional sentence when "some extraordinarily serious harm or culpability resulting from multiple offenses . . . would not otherwise be accounted for in determining the presumptive sentencing range." *State v. Fisher*, 108 Wn.2d 419, 428, 739 P.2d 683 (1987). "This inquiry is automatically satisfied whenever

'the defendant's high offender score is combined with multiple current offenses so that a standard sentence would result in "free" crimes—crimes for which there is no additional penalty.' " *State v. Smith*, 123 Wn.2d 51, 56, 864 P.2d 1371 (1993) (quoting *Stephens*, 116 Wn.2d at 243).

¶31 Under the "free crimes" doctrine, then, a trial court may impose an exceptional sentence where a defendant's current crimes would go unpunished through the imposition of a standard range sentence. *Van Buren*, 123 Wn. App. at 653.

¶32 Here, on the first degree rape conviction, Brundage's prior offenses resulted in 8 offender score points. RCW 9.94A.525 (governing calculation of offender score). The current unlawful possession of a firearm conviction added 1 point to his offender score, for a total of 9. RCW 9.94A.525. With an offender score of 9, Brundage's standard range was 240 to 318 months. RCW 9.94A.510. But with the second degree rape conviction, his offender score increased to 12. RCW 9.94A.525. Because the sentencing grid ends at 9, Brundage's standard range remained 240 to 318 months. Thus, if the trial court had imposed a standard range sentence, the second degree rape conviction would have gone unpunished. Only through an exceptional sentence could the trial court ensure that Brundage did not receive a "free crime."[13]

■■ ¶33 Given the trial court's proper application of the "free crimes" doctrine, we examine Brundage's exceptional sentence. We review the imposition of an exceptional sentence under RCW 9.94A.585. *State v. Ferguson*, 142 Wn.2d 631, 646, 15 P.3d 1271 (2001) (citing RCW 9.94A.210, which was later recodified as RCW 9.94A.585). On review, we determine first whether substantial evidence supports the trial court's reasons under the clearly errone-

---

[13] The same logic extends to the second degree rape conviction. Notably, the offender score calculation is the same for both rape convictions.

ous standard of review.[14] *Van Buren*, 123 Wn. App. at 653. Then we ask, de novo, whether those reasons justify a departure from the standard range. *State v. Smith*, 124 Wn. App. 417, 435, 102 P.3d 158, 167 (2004). Finally, we examine whether the trial court abused its discretion in imposing a sentence that is clearly too lenient or excessive. *Smith*, 124 Wn. App. at 435-36. "When the court identifies 'more than one justification for an exceptional sentence and each ground is an independent justification, we [may] affirm the sentence if one of the grounds is valid.'" *Id.* (affirming downward exceptional sentence) (alteration in original) (quoting *State v. Zatkovich*, 113 Wn. App. 70, 78, 52 P.3d 36 (2002)).

¶34 Here, the trial court properly imposed exceptional sentences. Under the clearly erroneous standard, substantial evidence supports one of the trial court's reasons. It identified three aggravating factors: (1) deliberate cruelty, (2) domestic violence, and (3) the standard range sentence was clearly too lenient under the multiple offense policy. Whether Brundage manifested deliberate cruelty and engaged in domestic violence are questions of fact. Accordingly, those grounds require a jury determination and are not valid under *Blakely*. But the court explicitly noted that it would "impose the exact same sentence even if only one of the grounds listed ... were valid." CP at 615.

¶35 As noted above, a jury need not determine a defendant's criminal history, calculate his offender score, or make a "free crimes" determination under *Blakely*. *Van Buren*, 123 Wn. App. at 654. Here, Brundage affirmatively agreed to his offender score of 12 on the first and second degree rape convictions. Further, the record supports a finding that current offenses would go unpunished if the trial court had not imposed an exceptional sentence. Under the clearly erroneous standard of review, then, substantial evidence

---

[14] Substantial evidence is that sufficient to persuade a fair-minded, rational person of the finding's truth. *State v. Solomon*, 114 Wn. App. 781, 789, 60 P.3d 1215 (2002), *review denied*, 149 Wn.2d 1025 (2003).

supports the trial court's reason, namely, the "free crimes" doctrine, for imposing exceptional sentences.

¶36 Reviewed de novo, the trial court's reasons justify a departure from the standard range. Unless the court imposed an exceptional sentence, Brundage would receive a "free" rape conviction, for which he would receive no punishment. This result is inconsistent with the legislature's stated purpose to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history." RCW 9.94A-.010(1). Accordingly, the trial court's imposition of an exceptional sentence was justified under the "free crimes" doctrine.

¶37 Finally, the trial court did not abuse its discretion when it imposed exceptional sentences of 498 months for first degree rape (count II) and 400 months for second degree rape (count I), to run concurrently. Brundage's total minimum confinement is 498 months, 120 months above the top of his standard range.[15] RCW 9.94A.510. This exceptional sentence reflects his extensive criminal history and the fact of both rape convictions. Without the additional time, his second degree rape conviction would go unpunished, an unjust result. As such, the trial court acted within its discretion.

¶38 We affirm the exceptional sentences.

¶39 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Armstrong, J., concurs.

¶40 Bridgewater, J. (concurring) — I concur in the majority's "free crime" analysis in addressing *Blakely v. Wash-*

---

[15] On the first degree rape conviction, Brundage's standard range was 240 to 318 months. Due to the firearm and domestic violence special sentence enhancements, however, his total standard range became 300 to 378 months. Thus, when the trial court imposed an exceptional sentence of 498 months, it added 120 months.

*ington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). I disagree with the decision in *State v. Borboa*, 124 Wn. App. 779, 102 P.3d 183 (2004), that a trial court's imposition of a minimum term under RCW 9.94A.712 is unconstitutional under *Blakely*. But this issue is not relevant in the instant case because I concur that we can decide this case using the "free crimes" analysis.