COURT OF APPEALS
STATE OF WASHINGT...
FILED

2014 APR 21 AM II: 51



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69508-8-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| JON A. DELDUCA,[1] | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 21, 2014 |
| | ) | |

BECKER, J. — Defending against a charge of child molestation, Jon Del

Duca's trial counsel decided not to introduce evidence of the victim's prior

statement suggesting several instances of sexual contact which was inconsistent

with her trial testimony describing a single incident. This was neither deficient

nor prejudicial. Counsel did intend to impeach the victim with a prior inconsistent

statement about a different matter but failed to lay a proper foundation to allow

admission of extrinsic evidence of the statement. Nevertheless, the record does

not demonstrate that Del Duca was prejudiced. We affirm the conviction.

FACTS

For several days in August 2010, Jon Del Duca was working on Daniel

Andrews's lakefront property helping to repair a concrete dock. Andrews lived

_____

[1] We use the spelling of Del Duca's name adopted by the parties in the
briefing and consistent with his signature.

next door to a couple and their two children, seven-year-old K and four-year-old C. Curious about the work Del Duca and Andrews were doing, K and C would occasionally stand by the waist-high fence separating the properties to watch.

When K's mother was helping her get ready for soccer practice one evening during this time, K told her mother that Del Duca had touched her. She demonstrated how Del Duca had reached over the fence, tickled her under her chin, reached for her armpit, then moved his hand over her clothing across her chest, abdomen, and finally between her legs. K's mother encouraged her to tell her father what had happened. The following day, K did so.

K's father talked to the neighbor, who in turn told Del Duca he could no longer work there. Del Duca approached K's parents to discuss the matter, and K's father confronted him. Del Duca denied touching the children and left the premises.

Approximately two months later, in October 2010, K's father encountered Del Duca at a neighborhood store. When Del Duca drove away from the store in his motorhome, K's father followed him and simultaneously called the police. Del Duca was eventually able to elude K's father, but the State later arrested and charged him with first degree child molestation based on the alleged sexual contact with K.[2]

---

[2] The State also charged Del Duca based on alleged similar sexual contact with K's brother C. The jury acquitted him on that count. We therefore refer to facts involving that count only insofar as they are relevant to the charge involving K.

Before trial, both a child interview specialist and defense counsel interviewed K. During her interview with the child interview specialist, K initially said Del Duca touched her "two or three times." Report of Proceedings at 86. But after describing the touching in detail, she said it only happened "that one time." Report of Proceedings at 94.

At trial, K described a single touching incident. In addition to K's testimony, the court admitted evidence of her disclosures to her parents and her statements to the child interview specialist.

Del Duca testified on his own behalf. He said he observed the children watching him work, reported briefly socializing with them several times during the course of the project, but denied touching them.

The jury convicted Del Duca of molesting K. The court imposed an indeterminate sentence with a minimum term of 68 months and a maximum term of life imprisonment. He appeals.

## INEFFECTIVE ASSISTANCE OF COUNSEL

When defense counsel cross-examined K, he did not ask about the number of incidents that occurred nor about any inconsistent statements she had made about the number of times Del Duca touched her. However, during the presentation of its case, the defense sought to present the testimony of the defense investigator who could testify about K's statements during her interview with defense counsel. Specifically, the defense wanted to admit two statements about the number of times K was touched by Del Duca. The first was K's

3

statement to defense counsel that the "first time it happened" she told her parents, suggesting there were additional later occasions. Clerk's Papers at 117. The second was K's statement that the touching happened on a "daily basis." Clerk's Papers at 126.

The defense also sought to admit two prior statements about conduct K described only during the interview with defense counsel. During the interview, K said that when Del Duca was working next door, she and her brother "wanted to go outside and jump in the lake and stuff. But [Del Duca] would jump in too, and he would like follow us wherever we went." Clerk's Papers at 123. K also said that one time, Del Duca "pop[ped] out of the bush and then he started like touching me and [C], and I just about screamed for my dad, and then he almost like covered my mouth so where the point I couldn't breathe." Clerk's Papers at 125.

During cross-examination, defense counsel asked K whether she remembered talking to him before trial. Then, counsel asked K whether there was ever an occasion when Del Duca jumped in the lake and followed her when she was swimming. She said no. Counsel also asked K whether Del Duca ever jumped out of a bush and tried to cover her mouth, and whether she remembered saying that he did that. K also denied this.[3]

---

[3] K also said in the defense interview that her brother told her that Del Duca touched him about five or six times. Clerk's Papers at 133. But because K did not indicate at trial or in her interview with the child interview specialist any specific number of times she believed Del Duca touched her brother, there was no inconsistency.

4

The court ruled that only two of K's prior statements were admissible: her statement about the "first time it happened," and her statement about Del Duca jumping out from a bush. The out-of-court statements were otherwise inadmissible because K had not been confronted with them or given an opportunity to explain or deny making the inconsistent statements. In accordance with this ruling, the defense submitted, through its investigator's testimony, K's prior statement describing the bush incident. Counsel expressly declined to submit the evidence regarding K's statement about the "first time."[4]

Del Duca contends that he was deprived of effective representation of counsel. He points out that although counsel wanted to impeach K with evidence of several prior statements, he was largely unable to do so because he failed to follow the proper procedure under ER 613(b) to admit the evidence. Del Duca argues that counsel thereby lost a critical opportunity to challenge K's credibility.

To establish ineffective assistance of counsel, a defendant must show deficient performance and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L .Ed. 2d 674 (1984). Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. State v. Stenson, 132 Wn.2d 668, 705-06, 940 P.2d 1239

---

[4] It appears that the trial court determined that this statement was inconsistent with K's testimony that the touching happened once but did not actually rule that a proper foundation was laid to admit the statement under ER 613. Nevertheless, at the end of the colloquy when restating the court's ruling, the prosecutor twice stated that K's statement about the "first time" was admissible. The court did not correct the State's interpretation of the ruling. Defense counsel expressly informed the court that despite the determination of admissibility, he would not ask about K's reference to the "first time."

(1997), <u>cert.</u> <u>denied</u>, 523 U.S. 1008 (1998). Prejudice occurs if, but for the deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. <u>State v. McFarland</u>, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). There is a strong presumption of effective assistance, and Del Duca bears the burden of demonstrating the absence in the record of a strategic basis for the challenged conduct. <u>McFarland</u>, 127 Wn.2d at 335-36.

To impeach a witness with a prior inconsistent statement under ER 613(b), the witness must be given an opportunity to admit or deny the statement and to explain it.[5] This can be done either before or after the extrinsic evidence is introduced. <u>State v. Horton</u>, 116 Wn. App. 909, 916, 68 P.3d 1145 (2003). If the witness is not asked about the statement during direct or cross-examination, impeachment may still be accomplished at a later point so long as arrangements are made for the witness to be recalled. <u>Horton</u>, 116 Wn. App. at 915-16.

With respect to the prior inconsistent statements about the number of times sexual contact occurred, counsel was permitted to introduce some evidence but declined to do so. Although K's prior statements about the number of incidents demonstrated inconsistency and could have impacted the jury's assessment of credibility, there was also a significant risk that the jury could have believed that Del Duca touched K in a sexual manner multiple times although K

---

[5] ER 613(b) states: "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."

was able to specifically recall and testify about only one incident. We infer that counsel's decision was strategic and there were legitimate tactical reasons not to introduce the evidence. We can see no reason why counsel would have made a different decision with respect to K's statement about touching on a "daily basis" had the court ruled that statement was admissible. Performance is not deficient if counsel's conduct can be characterized as a legitimate trial strategy. State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). Del Duca cannot demonstrate that counsel's performance was deficient or that he suffered prejudice.

In contrast, it is clear from the record that counsel wanted to impeach K with her prior statement about Del Duca following her into the lake. It is also clear that counsel believed he had properly laid the foundation under ER 613(b) by asking K if this actually happened. He did not, however, directly refer to the prior statement nor provide K with an opportunity to explain or deny it, as required by the rule. Nor did counsel reserve the right to recall K to preserve the opportunity to lay the foundation at a later point.

Nevertheless, even assuming for the sake of argument that it was deficient performance for counsel to fail to ask the appropriate question in order to properly lay the foundation to admit K's prior statement in furtherance of this impeachment strategy, Del Duca was not prejudiced. The circumstances here are unlike those present in Horton, where counsel's failure to follow the procedural requirements of ER 613(b) was clearly detrimental to the defendant's case. Horton, 116 Wn. App. at 916. In Horton, the victim had testified both on

7

direct and in cross-examination that prior to her medical examination, she had not engaged in sexual intercourse with any person other than the defendant. This evidence tended to show that the medical finding of "penetrating trauma to the hymen" must have been caused by the abuse allegedly perpetrated by the defendant. Horton, 116 Wn. App. at 911.

But the victim had previously admitted to two people that she had been sexually active with former boyfriends. Neither counsel asked the victim about those prior statements. Therefore, the defense was not permitted to call the witnesses to testify about the statements. There was no reasonable strategic reason not to present evidence impeaching the victim on a critical evidentiary matter, and because the failure to offer the evidence was prejudicial, the Court of Appeals reversed Horton's conviction. Horton, 116 Wn. App. at 922.

The impeaching evidence in this case did not directly undermine any critical piece of evidence. There was also a significant amount of evidence before the jury that had bearing on K's credibility by showing her inconsistency regarding various details about the incident. We are not convinced that the introduction of extrinsic evidence of any of the prior statements at issue would have actually benefitted Del Duca. Certainly the record does not demonstrate that, but for counsel's alleged deficiency, the outcome of the trial would have been different.

STATEMENT OF ADDITIONAL GROUNDS

Del Duca raises numerous issues in a pro se statement of additional grounds. He claims that his constitutional rights were violated because he was not indicted by a grand jury. But under Washington Constitution article I, section 25, the State may prosecute an individual for offenses by either information or indictment. Contrary to Del Duca's argument, this provision of the Washington Constitution is not at odds with the Fifth Amendment to the United States Constitution. State v. Nordstrom, 7 Wash. 506, 508, 35 P. 382 (1893), aff'd, 164 U.S. 705, 17 S. Ct. 997, 41 L. Ed. 1183 (1896). Washington courts have also determined that a grand jury indictment is not required to assure due process of the law. See State v. Ng, 104 Wn.2d 763, 774-75, 713 P.2d 63 (1985).

Del Duca also argues that he cannot be required to serve more than the minimum term of 68 months because his judgment and sentence includes a provision stating that the "total" confinement imposed is 68 months. Clerk's Papers at 196. However, because Del Duca was convicted of child molestation in the first degree, the court imposed an indeterminate sentence under RCW 9.94A.507. Thus, the court had to impose a maximum term and a minimum term. RCW 9.94A.507(3)(a). The minimum term had to be "within the standard sentence range for the offense," which was in this case 51 to 68 months' confinement. RCW 9.94A.507(3)(c)(i), .510. The maximum term had to be "the statutory maximum sentence for the offense," which was life imprisonment. RCW 9.94A.507(3)(b); RCW 9A.20.021(1)(a); RCW 9A.44.083.

Before the end of the Del Duca's minimum term, the Indeterminate Sentence Review Board will hold a hearing to determine whether to release him into community custody for the time left under the maximum term or impose a second minimum term of incarceration. RCW 9.95.420(3)(a); In re Postsentence Review of Hudgens, 156 Wn. App. 411, 421-22, 233 P.3d 566 (2010). Such reviews have the potential to extend imprisonment to the maximum sentence. See State v. Brundage, 126 Wn. App. 55, 63, 107 P.3d 742 (2005) (discussing indeterminate sentencing as previously codified under former RCW 9.94A.712), review denied, 157 Wn.2d 1017 (2006). The reference to "total" confinement in this context refers only to the initial minimum term imposed in the judgment and sentence.

Del Duca raises a number of other procedural and evidentiary issues. But his arguments are conclusory and are based on inaccurate and self-serving interpretations of the facts in the record. State v. Bugai, 30 Wn. App. 156, 158, 632 P.2d 917, review denied, 96 Wn.2d 1023 (1981); State v. King, 24 Wn. App. 495, 505, 601 P.2d 982 (1979). He makes other arguments that fail to adequately inform the court of the nature and occurrence of the alleged errors. See RAP 10.10(c); State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). None of these arguments merit further review. In addition, to the extent that Del Duca's allegations of ineffective assistance of counsel, prosecutorial misconduct, and claims related to his arrest appear to involve matters outside the trial court

record, the claims of error are not reviewable on direct review. See McFarland, 127 Wn.2d at 335.

Affirmed.

WE CONCUR:

Becker, J.

_Dwyer, J._   _Lau, J._