# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53257-3-II |
| Respondent, | |
| v. | |
| JOHN THOMAS TYLER, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — John Tyler appeals his sentence of 732.5 months to life for convictions of 15 counts relating to his sexual abuse of his daughter and two stepdaughters over the course of nearly a decade. In 2002, Tyler was convicted of and sentenced on 15 counts: 11 counts of first degree child rape, 2 counts of first degree child molestation, and 2 counts of second degree child rape. Tyler appealed twice and was resentenced twice, although his convictions were affirmed. At his third sentencing in 2019, the trial court imposed an exceptional sentence upward under RCW 9.94A.535(2)(c),[1] reasoning that some of Tyler's offenses would otherwise go unpunished.

Tyler argues that his sentence should be vacated and this case remanded for a new sentencing, arguing that (1) substantial evidence did not support the finding that some of his crimes would go unpunished given that some were subject to an indeterminate sentence, (2) his high offender score did not justify an exceptional sentence because the legislature already considered this factor when making them subject to indeterminate sentences, and (3) his

---

[1] The Legislature has amended RCW 9.94A.535 several times since 1992, but because the relevant language has not changed, we cite to the current version of the statute, which became law on July 28, 2019. LAWS OF 2019, ch. 219, § 1.

exceptional sentence of over 60 years of incarceration was clearly too excessive. In a Statement of Additional Grounds (SAG) for Review, Tyler challenges the constitutionality of his sentence. We hold that substantial evidence supports the trial court's findings, a standard range sentence would have resulted in most of Tyler's crimes going unpunished, the sentence was not clearly too excessive, and Tyler's sentence did not violate his constitutional rights. Consequently, we affirm Tyler's sentence.

## FACTS

### I. CRIME, TRIAL, AND VERDICT

In March 2002, the Clark County Prosecuting Attorney charged Tyler with 19 counts for multiple acts of child rape and child molestation of his daughter and two stepdaughters, then 14, 12, and 9 years old. The information alleged counts 1 through 13, 14 through 17, and 18 through 19 as crimes perpetrated against each child respectively.

In August 2002, a jury found Tyler guilty of 15 counts of child molestation and rape. Tyler was found guilty of 11 counts of first degree child rape, 2 counts of first degree child molestation, and 2 counts of second degree child rape.

### II. SENTENCE AND APPEALS

In 2002, Tyler was sentenced to an exceptional sentence upward of 878 months to life. In 2017, after a successful appeal that challenged the State's evidence of his criminal history, the trial court resentenced Tyler to an exceptional sentence for a total of 732.5 months to life.

In 2019, after another successful appeal that challenged the calculation of his offender score and a community custody condition, Tyler was resentenced again. Tyler's offender score was 46.

The trial court sentenced Tyler to 732.5 months to life by grouping his counts and running each group consecutively. [2] The trial court made a finding of fact that "defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished under RCW 9.94A.535(2)(c)." Clerk's Papers at 322. Tyler received the maximum standard range sentence of 280 months for 10 of the 11 counts of first degree child rape and second degree child rape, a median standard range sentence of 173.5 months for the 2 counts of first degree child molestation, and 279 months for count 15 (first degree child rape. Because counts 10 and 15 occurred after September 1, 2001, they are subject to indeterminate sentences and fall under the jurisdiction of the Indeterminate Sentence Review Board (ISRB) and the supervision of the Department of Corrections. RCW 9.94A.507. Thus, those counts could result in additional incarceration with a maximum range of life.

Tyler appeals his sentence.

ANALYSIS

I. LEGAL PRINCIPLES AND STANDARDS OF REVIEW

A.     *Exceptional Sentences under the Sentencing Reform Act*

The Sentencing Reform Act (SRA) of 1981, chapter 9.94A, generally requires that a sentencing court impose a sentence within the standard sentencing range. RCW

---

[2] The trial court imposed an exceptional minimum term for counts 10 and 15, and imposed an exceptional sentence for all the other counts. For sake of brevity, we refer to the sentence as "732.5 months to life." The trial court ruled that "count 15 is to run consecutively to counts 8 and 19 (counts 8 and 19 shall run concurrent to each other only) and to counts 1, 2, 3, 4, 6, 10, 11, 14, 16, 17, 18, 20 (counts 1, 2, 3, 4, 6, 10, 11, 14, 16, 17, 18, 20 shall run concurrent to each other only)." Clerk's Papers at 309.

9.94A505(2)(a)(i). The SRA was designed to provide a system for sentencing that "structures, but does not eliminate, discretionary decisions affecting sentencing," and to "ensure, in part, that the punishment for a criminal offense is proportionate to the seriousness of the offense and offender's criminal history." RCW 9.94A.010.

Trial courts consider seven policy goals when imposing a sentence:

(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
(2) Promote respect for the law by providing punishment which is just;
(3) Be commensurate with the punishment imposed on others committing similar offenses;
(4) Protect the public;
(5) Offer the offender an opportunity to improve himself or herself;
(6) Make frugal use of the state's and local governments' resources; and
(7) Reduce the risk of reoffending by offenders in the community.

RCW 9.94A.010.

A trial court may only depart from the standard sentence range "if it finds, considering the purpose of [the SRA], that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. A departure from the standards governing whether sentences for multiple counts run concurrently or consecutively under RCW 9.94A.589 is considered an exceptional sentence and must meet the same standards. RCW 9.94A.535. If a trial court determines that an exceptional sentence is appropriate, a reviewing court may reverse the exceptional sentence only if it finds:

(a) Either that the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard sentence range for that offense; or
(b) that the sentence imposed was clearly excessive or clearly too lenient.

RCW 9.94A.585(4).

A defendant's standard range sentence reaches its maximum limit at an offender score of nine. RCW 9.94A.510. "Punishment" as contemplated by the exceptional sentence statutes is "expressed in terms of total confinement time," and not the mere fact of a conviction itself. RCW 9.94A.530(1); *State v. Alvarado*, 164 Wn.2d 556, 562, 192 P.3d 345 (2008).

A trial court may impose an aggravated exceptional sentence without a finding of fact by a jury when it determines that the defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished. RCW 9.94A.535(2)(c).[3] "In other words, if the number of current offenses results in the legal conclusion that the defendant's presumptive sentence is identical to that which would be imposed if the defendant had committed fewer current offenses, then the court may impose an exceptional sentence." *State v. France*, 176 Wn. App. 463, 469, 308 P.3d 812 (2013).

B.      *Indeterminate Sentence Review Board*

RCW 9.94A.507, titled "Sentencing of [S]ex [O]ffenders," controls when sentencing offenders who commit first and second degree rape of a child. If the offender is subject to sentencing under section (3)(a) of this statute, the trial court is required to impose both a minimum and maximum sentence. RCW 9.94A.507(3)(a). The maximum sentence is the statutory maximum sentence for the offense under the cognizant criminal statute, and the minimum sentence may be either within a standard range sentence for the offense or outside the standard range as an exceptional sentence under RCW 9.94A.535. RCW 9.94A.507(3). RCW

---

[3] Our Supreme Court in *Alvarado* expressly held that RCW 9.94A.535(2)(c) does not violate the Sixth Amendment and that a trial court can, without a jury finding, impose an exceptional sentence based on the "free crimes" doctrine. 164 Wn.2d at 568-69.

9.94A.507(3)(c) explicitly provides that the minimum term may be "outside the standard range pursuant to RCW 9.94A.535, if the offender is otherwise eligible for such a sentence."

The Department of Corrections, prior to the conclusion of the offender's minimum sentence, conducts an end of sentence review and evaluation of the offender based on "methodologies . . . recognized by experts in the prediction of sexual dangerousness." RCW 9.95.420(1)(a). At the expiration of the minimum term, the ISRB conducts a hearing to determine whether the offender poses a risk of engaging in sex offenses if released to community custody. RCW 9.95.420(3)(a). The offender shall be released, subject to the ISRB's conditions, "unless the [ISRB] determines by a preponderance of the evidence that, despite such conditions, it is more likely than not that the offender will commit sex offenses if released." RCW 9.95.420(3)(a). The ISRB "makes an informed prediction about whether it believes the offender is likely to commit more sex offenses if released before the expiration of his or her maximum sentence." *In re Pers. Restraint of McCarthy*, 161 Wn.2d 234, 244, 164 P.3d 1283 (2007). "If the [ISRB] does not order the offender released, [the ISRB] must establish a new minimum term for the offender as provided in RCW 9.95.011." RCW 9.95.420(3)(a).

C.     *Review of Exceptional Sentences*

RCW 9.94A.585(4) requires us to ask three questions, each with a different standard of review.

> 1. Are the reasons given by the sentencing judge supported by evidence in the record? As to this, the standard of review is clearly erroneous.
>
> 2. Do the reasons justify a departure from the standard range? This question is reviewed de novo as a matter of law.
>
> 3. Is the sentence clearly too excessive or too lenient? The standard of review on this last question is abuse of discretion.

6

*State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717(2005) (quoting *State v. Ha'mim*, 132 Wn.2d 834, 840, 940 P.2d 633 (1997), *overruled in part on other grounds by State v. O'Dell*, 183 Wn.2d 680, 696, 358 P.3d 359 (2015)).

## II.  ARGUMENTS

A.      *Finding That Tyler's Current Offenses Would Go Unpunished Not Clearly Erroneous*

Tyler argues that the record does not support the finding that his crimes would go unpunished without imposition of an exceptional sentence.  Specifically, Tyler argues that because he "faced a lengthy and indeterminate standard sentence range," and because the ISRB would take into account his other offenses in determining the ultimate sentence imposed, substantial evidence does not support the sentencing court's finding.  Br. of Appellant at 7.  We disagree.

We review whether the reasons given by the trial court are supported by evidence in the record under a clear error standard.  *Law*, 154 Wn.2d at 93.

Regarding an indeterminate sentence, RCW 9.94A.507(3)(c) allows a trial court to set a minimum term outside the standard range if the offender is eligible for such a sentence.  And under the "free crimes" doctrine, a trial court may impose a sentence outside the standard range where a defendant's current crimes would go unpunished through the imposition of a standard range sentence.  *State v. Brundage*, 126 Wn. App. 55, 67, 107 P.3d 742 (2005).  This condition is "automatically satisfied whenever 'the defendant's high offender score is combined with multiple current offenses so that a standard sentence would result in 'free crimes'—crimes for which there is no additional penalty.'"  *Brundage*, 126 Wn. App. at 66-67 (quoting *State v. Smith*, 123 Wn.2d 51, 56, 864 P.2d 1371 (1993)).  The determination that some offenses would

go unpunished without an exceptional sentence "rests solely on criminal history and calculation of the offender score . . ." and RCW 9.94A.535(2)(c) "flow[s] *automatically* from the existence of free crimes." *Alvarado*, 164 Wn.2d at 568-69.

Tyler's argument ignores RCW 9.94A.507(3)(c). The legislature clearly recognized the ISRB's role when it provided that the trial court could set the minimum term outside the standard range.

Moreover, Tyler's argument misconstrues the purpose of the ISRB. RCW 9.95.420(3)(a) creates a presumption of release for sex offenders unless "it is more likely than not that the offender will commit sex offenses if released." The conditionality of release set forth by the legislature under this section addresses *public safety*, not punishment. The ISRB has no power under the statute to prevent Tyler's release for sake of punishment, and so the mere fact that the ISRB may determine that an offender cannot be released for public safety sake is not a fact of consequence for a trial court when making an RCW 9.94A.535(2)(c) analysis.

Moreover, only 2 of the 15 counts implicate the ISRB, so even if we agreed with Tyler on this point, other crimes would go unpunished. The free crimes aggravator is triggered when *some* of the current offenses would go unpunished, and because RCW 9.94A.535(2)(c) makes no distinction between punished and unpunished crimes, all current offenses are subject to an exceptional sentence. *France*, 176 Wn. App. at 470.

Tyler's offender score of 46 substantially exceeded the statutory maximum of 9. RCW 9.94A.510. Starting with 4 points from his prior criminal history, and adding 3 points for each current sex offense, had Tyler committed only 3 total offenses of the 15 for which he was convicted, he would have been at 10 points and would have exceeded the maximum number of

points for the sentencing range grid. Thus, 12 crimes would have gone unpunished and would have failed to punish Tyler for any of the crimes perpetrated against 2 of his 3 victims. We hold that substantial evidence supports the trial court's finding that some of Tyler's crimes would go unpunished and that it was therefore not clearly erroneous.

B.      *"Free Crimes" Doctrine Justifies Departure*

Tyler argues that his high offender score does not justify an exceptional sentence because "the legislature already determined that his offenses required an indeterminate sentence," and that a trial court therefore cannot consider his high offender score as a factor. Br. of Appellant at 10. We disagree.

We review whether the reasons considered by the trial court justify an exceptional sentence de novo. *Law*, 154 Wn.2d at 93. We employ a two-part test to determine whether a factor legally supports departure from the standard sentence range. *Ha'mim*, 132 Wn.2d at 840. First, a trial court may not base an exceptional sentence on factors necessarily considered by the legislature in establishing the standard sentence range. Second, the asserted aggravating or mitigating factor must be sufficiently substantial and compelling to distinguish the crime in question from others in the same category. *Ha'mim*, 132 Wn.2d at 840.

Here, the trial court justified its exceptional sentence based on the "free crimes" doctrine through RCW 9.94A.535(2)(c), which is a circumstance the legislature did not intend to be included in the concept of an indeterminate sentencing. This is evidenced by the fact that an offender may receive an indeterminate sentence for only one crime and by the fact that the indeterminate sentencing statute specifically provides that the trial court can set a minimum term outside the standard range. RCW 9.94A.507(3)(c). Moreover, Tyler's argument leads to an

absurd result that would preclude a trial court from ever imposing an exceptional sentence in any case where the ISRB had jurisdiction over even one conviction.

Without the exceptional sentence, Tyler's convictions for 8 counts of first degree child rape, 2 counts of second degree child rape, and 2 counts of first degree child molestation, would receive no punishment. All of Tyler's crimes committed from 1995 to 2002 would have gone unpunished. Most of the abuse one victim suffered would have gone unanswered. Plus, all his crimes against two other victims would have gone unpunished. The exceptional sentence is consistent with the legislature's stated purpose to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history." RCW 9.94A.010(1). Accordingly, we hold that the trial court's imposition of an exceptional sentence was justified under the "free crimes" doctrine.

C.      *Tyler's Sentence Not Clearly Too Excessive*

Tyler briefly argues that the trial court abused its discretion by imposing the exceptional sentence because he would be more than 90 years old at the expiration of his minimum term, and it is unreasonable to deprive the ISRB of its decision as to whether Tyler should serve out the maximum life sentence. This argument fails.

We review whether or not a sentence is clearly too excessive for an abuse of discretion. *Law*, 154 Wn.2d at 93.

Again, Tyler misunderstands the purpose of the ISRB. The ISRB decides if an offender cannot be released based on public safety, not on punishment. Punishment is the trial court's prerogative at sentencing. RCW 9.94A.010. This exceptional sentence reflects the full extent of

Tyler's crimes. We hold that this sentence was not clearly too excessive based on Tyler's age, and therefore not an abuse of discretion.

D.      *SAG*

  1. *Imposition of Exceptional Sentence Not Unconstitutional Without Jury Finding of Fact*

In his SAG, Tyler argues that the resentencing court violated his Sixth Amendment jury trial rights by imposing an exceptional sentence absent a jury finding that aggravating circumstances justified such an exceptional sentence. We disagree.

This issue was similarly raised by Tyler in a prior appeal, and it was considered and rejected. *State v. Tyler*, No. 50434-1-II, slip op. at 1 (Wash. Ct. App. Dec. 4, 2018) (unpublished), http://www.courts.wa.gov./opinions/pdf./504341.pdf. For the reasons discussed in that case, the sentencing court did not engage in impermissible fact finding when it imposed an exceptional sentence, and Tyler's Sixth Amendment claim fails.

  2. *Due Process Not Offended by Notice Requirement Violation*

In his SAG, Tyler argues that the State failed to give him adequate notice before trial that they were going to seek an aggravated sentence "in violation of [RCW 9.94A.537(1) . . . and due process." SAG 2. We disagree.

The SRA requires the State to provide notice that it will seek an exceptional sentence based on aggravating circumstances, but it does not dictate how that notice is to be given. *State v. Siers*, 174 Wn.2d 269, 277, 274 P.3d 358 (2012). The state and federal constitutions provide that a defendant receive adequate notice of the nature and cause of the accusation to allow him to prepare an adequate defense. *Siers*, 174 Wn.2d at 277. However, pretrial notice of the State's

11

intent to seek exceptional consecutive sentences on remand for resentencing is not required. *State v. McNeal*, 156 Wn. App. 340, 357, 231 P.3d 1266 (2010).

Here, the State filed memoranda in support of its request for an exceptional sentence in 2002 at the first sentencing and in 2017 at the first resentencing. We hold that because Tyler received adequate notice of the facts that could form the basis of his sentence and the State's intent to seek an exceptional sentence, Tyler was allowed adequate time to prepare his defense, and the State fulfilled its constitutional duty.

3. *Challenge to Trial Court's Findings of Fact at Sentencing Not Timely*

In his SAG, Tyler argues that the trial court erred in relying on a presentencing report investigation without his or his representative's participation. We disagree.

"In determining the appropriate sentence, the trial court can consider the presentencing reports unless the defendant objects." *State v. Wakefield*, 130 Wn.2d 464, 476, 925 P.2d 183 (1996). "When the defendant fails to object to information presented at sentencing, that information is deemed acknowledged." *State v. Reynolds*, 80 Wn. App. 851, 860, 912 P.2d 494 (1996). "In order to dispute information in the [presentencing] report, the defendant must make a timely and specific challenge." *State v. Atkinson*, 113 Wn. App. 661, 669, 54 P.3d 702 (2002).

A review of the record shows that Tyler failed to make a timely objection to the trial court's consideration of the presentencing reports. At the resentencing hearing in 2019, Tyler requested confirmation on the record that a presentencing investigation report was conducted prior to the original sentencing in 2002. The trial court confirmed that it had, and Tyler did not object to the report. Tyler raises the presentence report issue for the first time in his SAG. We

hold that Tyler may not challenge for the first time on appeal the trial court's consideration of the presentencing reports.

CONCLUSION

We hold that (1) the finding that Tyler's current offenses would go unpunished was supported by substantial evidence, thus, was not clearly erroneous; (2) that the trial court's departure from the standard range was justified given that some of Tyler's current offenses would go unpunished; (3) Tyler's sentence was not too excessive, thus, was not an abuse of discretion; and (4) Tyler's SAG raises no reversible error. Consequently, the trial court did not err when it imposed an exceptional sentence and minimum term. Thus, we affirm Tyler's sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

_____
Melnick, J.

_____
Glasgow, J.